THE STATE OF IOWA, Appellee, v. P. C. KING, Appellant.

1.  **Embezzlement:** INDICTMENT : DUPLICITY.  An indictment charging one with embezzlement of public funds, received by him as county treasurer, "by expending the same in his private business, and by permitting persons, whose names are to the grand jury unknown, to use and expend said money in their private

business transactions, and by using said money to pay his own private debts," is not bad for duplicity, as charging three distinct offenses, nor is it ambiguous because the amount appropriated by each of the methods of the conversion is not stated, but the matter so alleged is mere surplusage.

2. ———— : JURY : CHALLENGE FOR CAUSE. The rule announced in *State v. Vatter*, 71 Iowa, 557, and *State v. Munchrath*, 78 Iowa, 268, in relation to the right to challenge a juror for cause who has formed or expressed an opinion as to the guilt or innocence of the defendant in criminal cases, adhered to.

3. ———— : EVIDENCE. Where an indictment for embezzlement alleges the various purposes to which the funds converted were used, proof of such allegations is not necessary to a conviction.

4. ———— : ————. The introduction of the record of the board of supervisors in such case to show the report of the defendant as treasurer, *held*, to be without prejudice, when the report itself was afterwards introduced in evidence.

5. ———— : ————. After the board of supervisors had made demand upon the defendant for a settlement of his accounts as treasurer, and time had been given him to write up his books, and he had been urged by the board from time to time to produce the money that should be in his custody, the defendant tendered some money and bank drafts necessary to make up the amount, but the board refused to receive the drafts as money, and again defendant produced the proper amount of money, but the board refused to settle with him, because he demanded that the money be immediately returned to him. When defendant was finally removed from office, he was found to be in default in the sum of over twenty thousand dollars, and no explanation of the defalcation was made upon the trial. *Held*, that the charge of embezzlement was supported by the evidence.

*Appeal from Taylor District Court.* —HON. R. C. HENRY, Judge.

WEDNESDAY, JANUARY 21, 1891.

THE defendant was tried and convicted upon an indictment for the crime of embezzlement, and he appeals.

*L. T. McCoun*, for appellant.

*John Y. Stone*, Attorney General, and *Geo. F. Henry*, for the State.

ROTHROCK, J.—I.   The defendant was treasurer of Taylor county for several years prior to the year 1884.

1. EMBEZZLE-
MENT: indict-
ment: duplic-
ity.

He was removed from the office by the board of supervisors of the county on the second day of August of that year. At the time of his removal, he paid over to his successor, of the public funds in his hands, the sum of two hundred and sixteen dollars and eighty-one cents, and failed to pay or account for about twenty-seven thousand dollars, which had been in his hands as treasurer. Because of his failure to account for and pay over said money, he was indicted for the crime of embezzlement. The charging part of the indictment is as follows: "That he, said King, did then and there, unlawfully and feloniously embezzle and convert to his own use, without authority of law, the sum of twenty-seven thousand, five hundred and fifteen and sixteen-hundredths dollars of the public moneys of said county, and which said money came into his hands by virtue of his office of treasurer, as aforesaid. The said defendant did, as aforesaid, then and there unlawfully and feloniously, and without authority of law, convert said money to his own use, by expending the same in his private business, and by permitting persons, whose names are to this grand jury unknown, to use and expend said money in their private business transactions, and by using said money to pay his own private debts, so that said sum of twenty-seven thousand, five hundred and fifteen and sixteen-hundredths dollars of the public moneys of the said county of Taylor, which came into the hands of the defendant by virtue of his office as treasurer, aforesaid, was then and there, and is now, wholly lost to said county, and the said defendant then and there wholly failed to account for the same, and said sum of money is now wholly unaccounted for, contrary to law."

It is claimed that the indictment is fatally defective, because it charges that the defendant expended the money in his private business, and by permitting

others to expend it in their private business, and by using the money in paying defendant's private debts. It is claimed that each one of these acts charged a separate offense, and that, as but one offense can be charged in an indictment, a motion in arrest of judgment should have been sustained, because the indictment is bad for duplicity. It is further claimed that the indictment is ambiguous, because it does not state how much of the money was used by King in paying his private debts, and how much for the other purposes named. In support of this contention reliance is had upon the case of *State v. Brandt*, 41 Iowa, 610. That case is not authority upon this question In so far as the question was involved in that case, the court was equally divided in opinion, and it may well be doubted whether the question, now presented, was in the cited case. The question there appears to have been whether an indictment charging the crime in the language of the statute was sufficient. In the case at bar the complaint is that the indictment charges too much, in that it sets out three different modes in which the defendant appropriated the money, and does not describe these methods of appropriation with sufficient certainty. We are of opinion that the indictment is sufficient. The gist of the offense is the wrongful conversion of the public money, and it is wholly immaterial and mere surplusage to state whether the defendant used it in paying his debts, in purchasing property, had it on deposit in bank, carried it on his person, or loaned it to others, and the fact that three different modes of concealing the money are set forth in the indictment is wholly immaterial.

II. The defendant challenged two jurors for cause, on the ground that they had formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent them from rendering a true verdict upon the evidence submitted on the trial. These challenges were overruled We have examined the proceedings had in

2. ——: jury: challenge for cause

relation to the objection to these jurors.   Their exam-
ination,   under  oath,   as   to   their  qualifications,  is
fully set forth by question and answer in appellee's
abstract, and our conclusion is that there was no error
in overruling the challenges.   It is unnecessary to set,
out the proceedings at length.   The ruling of the court
is fully sustained by the cases of *State v. Vatter*, 71
Iowa, 557, and *State v. Munchrath*, 78 Iowa, 268.

III.   The evidence did not tend to show the manner
in which King disposed of the money for which he
3. ——: evi-  failed to account.   It is urged that it was
dence.   necessary to prove that it was disposed of
in the manner alleged in the indictment.   This appears to
us to have been wholly unnecessary.   Embezzlement is a
species of larceny, and, if an indictment for larceny of
goods should aver that the goods were taken and
removed in a wagon, on a horse, or in any other man-
ner, it would be wholly immaterial.   Proof that the
goods were taken and carried away in any manner
would be sufficient.

IV.   The state introduced the record of the board
of supervisors to show the report of the defendant as
4. THE same.  treasurer.   It is claimed that the record
was erroneously admitted, because it was
secondary evidence.   Whatever of merit, if any, there
may be in this objection, there was no prejudice to the
defendant, for the reason that the report itself was after-
wards introduced in evidence.

Other questions as to rulings upon the admission
and exclusion of evidence need not be specially men-
tioned.   They all relate to matters pertaining to the
record of the board of supervisors, and to conversations
and transactions between the board and defendant
touching a settlement and accounting for the funds in
the defendant's hands.   In view of the facts which are
practically conceded in the case, these rulings were no
prejudice to the defendant, and we may say here, that
the objections to the refusal to give instructions to the
jury requested by the defendant, and the alleged errors
in the instructions given by the court to the jury, are

all without merit. The court in all these rulings evidently followed the case of *State v. Bryan*, 40 Iowa, 379, where it is said that, " the crime with which the defendant is charged consists in receiving the money as treasurer, and in converting it to his own use. Whatever will establish these facts will prove the defendant's guilt. That he received the money is proved, and not disputed, and the proof of a demand and refusal was distinctly made, and is not controverted, and this is evidence of conversion. The defendant might have shown an excuse for his refusal, such as that the bank with which he had deposited the money had failed; that he had been robbed of it; that the house where he kept it was burned, and the money with it; that he had invested it in government bonds, and could not pay until he could send them to market," etc.

V. The evidence in this case shows, beyond all question, that the board of supervisors demanded a settlement with the defendant as treasurer at their regular meeting in June. King asked time to prepare for a settlement, and the board gave him until June 20 to write up his books and make ready for a settlement. No settlement was made at' that time. The board kept meeting and adjourning, and pressing King to produce the money which should have been in his custody. He at one time produced some money and bank drafts necessary to make up the amount. The board refused to receive the drafts as money. At another time King produced the proper amount in money, but the board refused to settle with him because he demanded that the money be immediately returned to him. The sequel shows that the board of supervisors did its duty in refusing to receive the drafts and money upon the terms proposed by the defendant, because, when King was removed, on the second day of August, 1884, he paid over to his successor about two hundred dollars, and was a defaulter in the sum of over twenty thousand dollars. He made no explanation of how or in what manner he used the

*5. The same.*

money. The money was lost to the county. This showing established the crime of embezzlement, and the jury could. not properly have found any other verdict than that the defendant was guilty.

The judgment of the district court is AFFIRMED.