BENJAMIN D. MILLS V. STATE OF NEBRASKA.

FILED JANUARY 3, 1898.   No. 9234.

53  263
62  446n

1. **Information:** COMPLAINT: VARIANCE. In a prosecution by information, the complaint and information must charge the same offense, but it is sufficient if the charge in the information is substantially the same as that alleged in the complaint. If this is so, a plea of no preliminary examination on the ground of a variance between the complaint and information is without force. *(Cowan v. State*, 22 Neb. 519; *Hockenberger v. State*, 49 Neb. 706.)

2. ———: ———: ———. If the identity of the offense charged is preserved, the statement of it in the information or counts thereof may be varied from that of the complaint to meet a possible state of the proof.

3. ———: UNCERTAINTY: EMBEZZLEMENT. The word "embezzle" includes within its import the "conversion to his own use" as alleged in an information against one accused of embezzlement, and it does not constitute an information fatally defective, for uncertainty as a plea, that the two are joined by the copulative "and." The same is also true of the first and any other word or set of words used to express a manner of the commission of the crime.

4. **Embezzlement:** INFORMATION: ALLEGATION OF VALUE. In an allegation of an information of the crime of embezzlement it was stated that the embezzlement was of the sum of $6,000 in money. *Held*, To be a sufficient expression of the value, the presumption being that it was lawful money.

5. ———: PUBLIC MONEY: OFFICERS AND OTHERS. By section 124 of the Criminal Code, any person who advises, aids, or participates in the embezzlement of public money by the officer or person charged with the collection, receipt, safe-keeping, transfer, or disbursement of such money is himself guilty of embezzlement. The words "any person" refer to all, and are not confined in

meaning to a person or persons or officer or officers in some manner intrusted with the collection, handling, or care of public money.

6. **Instruction Defining Crime.** An instruction which consisted of quotation of the main portions of the section of the Criminal Code under which the prosecution was instituted *held* not improper or misleading.

7. **Instructions:** CRIMINAL LAW: CIRCUMSTANCES. An instruction in this cause in regard to consideration of circumstances *held* proper, and when construed with the other instructions not misleading.

8. ————: REVIEW. Instructions to the jury are to be considered together and construed as a whole; and if, so considered and construed, they are correct, it is sufficient.

9. ————: EMBEZZLEMENT: EVIDENCE. Certain instructions examined and *held* applicable to the evidence herein, and proper.

10. ————: NON-DIRECTION: REVIEW. Mere non-direction does not furnish sufficient reason for reversal on review unless proper instructions have been requested and refused. (*Hill v. State*, 42 Neb. 503; *Pjarrou v. State*, 47 Neb. 294.)

11. **Embezzlement:** EVIDENCE: RECEIPT. Objections to the admission of evidence examined and *held* properly overruled.

12. **New Trial:** NEWLY-DISCOVERED EVIDENCE. To entitle a party to a new trial on the ground of newly-discovered evidence, it must appear that the applicant for the new trial could not with reasonable diligence have discovered and produced such evidence at the trial. (Criminal Code secs. 490, 492.)

13. **Embezzlement:** CONVICTION. Evidence *held* sufficient to sustain the verdict.

ERROR to the district court for Harlan county. Tried below before THOMPSON, J. *Affirmed.*

The facts are stated in the opinion.

*James McNeny* and *Thomas Darnall*, for plaintiff in error:

The court erred in overruling the plea in abatement as to the fourth count in the information. For the crime sought to be charged therein the plaintiff in error had neither had nor waived a preliminary hearing. There was a fatal variance between the complaint and

the information. (*Yaner v. People,* 34 Mich. 286; *People v. Jones,* 24 Mich. 214; *People v. Fairchild,* 48 Mich. 31; *People v. Wallace,* 94 Cal. 497; *People v. Parker,* 91 Cal. 91.)

The first count of the information is invalid for uncertainty. (*United States v. Cruickshank,* 92 U. S. 558; *State v. Benjamin,* 49 Vt. 101; *Commonwealth v. Chase,* 125 Mass. 202.)

The first count of the information is insufficient because it fails to state the value of the money alleged to have been embezzled. (*Bork v. People,* 16 Hun [N. Y.] 476; *State v. Stimson,* 4 Zab. [N. J. Law] 9; *Commonwealth v. Smith,* 1 Mass. 245.)

It is absolutely essential to establish the principal's guilt, beyond a reasonable doubt, before the accessory can be convicted. (*Ogden v. State,* 12 Wis. 592; *Pettes v. Commonwealth,* 126 Mass. 242; *Hatchett v. Commonwealth,* 75 Va. 925; *Goins v. State,* 46 O. St. 457; *Ulmer v. State,* 14 Ind. 52; *Buck v. Commonwealth,* 107 Pa. St. 486.)

The evidence does not establish the crime of embezzlement against the principal, and plaintiff in error was not lawfully convicted. (*Hamilton v. State,* 46 Neb. 284; *Fitzgerald v. State,* 50 N. J. Law 475; *People v. Royce,* 106 Cal. 173; *Chapin v. Lee,* 18 Neb. 440; *Fleener v. State,* 58 Ark. 98; *Commonwealth v. Este,* 140 Mass. 279; *State v. Hebel,* 72 Ind. 361; *State v. Munch,* 22 Minn. 75; *People v. Galland,* 55 Mich. 628.)

The fourth count of the information does not state facts sufficient to constitute a crime under the laws of the state. Stripped of its legal phraseology, this count simply charges plaintiff in error with having borrowed the money of the county treasurer, knowing the same to be the money of Harlan county. Is this an offense within the meaning of the statute? We contend it is not. (*State v. Teahan,* 50 Conn. 100; *Commonwealth v. Kimball,* 21 Pick. [Mass.] 373.)

Instruction No. 8 was erroneous in directing the jury

that guilt could be established not only by direct evidence, and other competent evidence, but by "circumstances." (*Long v. State,* 23 Neb. 33; *Thompson v. State,* 30 Ala. 28.)

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for the state.

References: *State v. King,* 81 Ia. 587; *Rhodes v. State,* 27 N. E. Rep. [Ind.] 866; *United States v. Bryne,* 44 Fed. Rep. 188; *State v. Fain,* 106 N. Car. 760; *State v. Knox,* 17 Neb. 683.

HARRISON, J.

The plaintiff in error was by an information filed in the district court of Harlan county charged in the seven counts thereof with the crime of embezzlement. After some preliminary pleas were heard and decided in accordance with motions presented and sustained, the objects of which were that the state be required to elect on which count or counts of the information it would stand and proceed with the prosecution, the state elected to proceed under the first and fourth counts. The plaintiff in error pleaded not guilty, and a trial resulted in his conviction and sentence to a term of imprisonment in the penitentiary, and to pay a fine in double the amount which by the verdict he was adjudged guilty of embezzlement. The prosecution was instituted for an alleged violation of the provisions of section 124 of the Criminal Code, which, to the extent we need notice it, is as follows: "If any officer or other person charged with the collection, receipt, safe-keeping, transfer, or disbursement of the public money, or any part thereof, belonging to the state, or to any county, or precinct, organized city or village, or school district in this state, shall convert to his own use, or to the use of any other person or persons, body-corporate, association or party whatever, in any way whatever, or shall use by way of investment in any kind of security, stock, loan, property, land, or mer-

chandise, or in any other manner or form whatever, or
shall loan, with or without interest, to any company,
corporation, association, or individual, any portion of the
public money, or any other funds, property, bonds, secu-
rities, assets, or effects of any kind, received, controlled,
or held by him for safe-keeping, transfer, or disbursement,
or in any other way or manner, or for any other purpose;
or, if any person shall advise, aid, or in any manner par-
ticipate in such act, every such act shall be deemed and
held in law to be an embezzlement of so much of the said
moneys or other property, as aforesaid, as shall thus be
converted, used, invested, loaned or paid out as afore-
said, which is hereby declared to be a high crime, and
such officer or person or persons shall be imprisoned in
the penitentiary not less than one year nor more than
twenty-one years, according to the magnitude of the em-
bezzlement, and also pay a fine equal to double the
amount of money or other property so embezzled as
aforesaid." It was charged in the first count of the
information: "That Ezra S. Whitney, late of said county,
on the 31st day of December, 1894, in the county of Har-
lan, state of Nebraska, being an officer, to-wit, being the
county treasurer for the said county of Harlan, being
charged as such officer with the collection, receipt, safe-
keeping, transfer, and disbursement of the public moneys
belonging to said county, certain of said moneys, to-wit,
six thousand dollars of the public moneys belonging to
said county, did unlawfully and fraudulently embezzle
and convert to his own use, which said moneys had come
into the possession and custody of the said Ezra S. Whit-
ney, by virtue of his said office, and in his discharge of
the duties thereof. And before said embezzlement, con-
version, and felony was committed as aforesaid by the
said Ezra S. Whitney, to-wit, on the 31st day of Decem-
ber, 1894, in the county of Harlan aforesaid, one Benja-
min D. Mills unlawfully, purposely, fraudulently, cor-
ruptly, and feloniously did then and there procure,
advise, incite, aid, and abet the said Ezra S. Whitney in

the perpetration of said embezzlement and conversion in the manner and form aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Nebraska." And in the fourth: "That the said Ezra S. Whitney, late of said county, on the 31st of December, 1894, in the county of Harlan, and state of Nebraska, being an officer, to-wit, being the county treasurer for the said county of Harlan, and being charged as such officer with the collection, receipt, safe-keeping, transfer, and disbursement of the public moneys belonging to said county, certain of said moneys, to-wit, six thousand dollars of the public moneys belonging to said county, did unlawfully and fraudulently loan and convert to the use of the said Benjamin D. Mills, which said money had come into the possession and custody of the said Ezra S. Whitney by virtue of his said office, and in his discharge of the duties thereof, and had been received and was controlled and held by him, the said Ezra S. Whitney, for safe-keeping, transfer, and disbursement, as county treasurer as aforesaid. And the said Benjamin D. Mills, then and there being, did then and there, unlawfully, knowingly, and feloniously, advise and procure the said Ezra S. Whitney, county treasurer as aforesaid, to loan him, the said Benjamin D. Mills, said six thousand dollars of said public money, and the said Benjamin D. Mills, did then and there receive from and of Ezra S. Whitney, treasurer of said Harlan county as aforesaid, said six thousand dollars, he, the said Benjamin D. Mills, then and there well knowing the same to be the public money of said Harlan county, received and held as aforesaid, with intent to embezzle and convert to the use of him, the said Benjamin D. Mills, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Nebraska."

By plea in abatement the point was raised and presented in the trial court that the fourth count contained a charge of a crime which was not alleged in the com-

plaint filed in the examining court; hence the plaintiff in error had never had or waived a preliminary examination on such accusation.  There were four counts in the complaint filed with the justice of the peace, and when arrested and taken before the justice, the plaintiff in error waived an examination.  The first count of the complaint, after statements that Ezra S. Whitney was county treasurer of Harlan county, Nebraska, and of his duties in regard to collection, disbursement, etc., of the public moneys, charged that he did fraudulently, unlawfully, and feloniously convert to his own use and embezzle the sum of $700 of said public money, and that Benjamin D. Mills, plaintiff in error, unlawfully, purposely, fraudulently, corruptly and feloniously did procure, advise, incite, aid, and abet the said Ezra S. Whitney in the perpetration of said embezzlement and conversion.  The second count was in substance the same, except as to the amount alleged to have been embezzled, which was $600; also the third, except as to amount, which was stated to be $6,000; and likewise the fourth, except in it the sum was fixed at $11,190.  The fourth count in the information filed in the district court, it will be borne in mind, charged the conversion of the public money, in the sum of $6,000, to the use of Benjamin D. Mills, and that it was by his advice and procurement that it was done.  Under the system of prosecution by information it may be said the complaint and information should charge the same offense; but it may be added, when it appears that the charge in the complaint is substantially the same as that set forth in the information, the plea of the want of a preliminary examination, or a variance between the complaint and the information is unavailing.  (*Cowan v. State*, 22 Neb. 519; *Hockenberger v. State*, 49 Neb. 706.)  In the case of *State v. King*, 81 Ia. 587, wherein the defendant had been treasurer of a county in Iowa and was indicted for embezzling the funds of the county, it was charged in the pleading, after the usual averments, that he "did  *  *  *

embezzle and convert to his own use without authority
of law," a stated sum; that "he did  *  *  *  convert
said money to his own use  by expending the same in
his private business, and by permitting persons, whose
names are to this grand jury unknown, to use and expend
said money in their private business transactions, and by
using said money to pay his own private debts." The
court in review, in passing on the question of whether
the indictment was bad for duplicity, observed: "We
are of opinion that the indictment is sufficient. The gist
of the offense is the wrongful conversion of the public
money, and it is wholly immaterial and mere surplusage
to state whether the defendant used it in paying his debt,
in purchasing property, had it on deposit in bank, carried
it on his person, or loaned it to others; and the fact that
three different modes of concealing the money are set
forth in the indictment is wholly immaterial." The case
of *State v. Spaulding,* 24 Kan. 1, is one in which the de-
fendant was convicted in the trial court of the crime of
embezzlement. It is stated in one paragraph of the head-
notes: "A preliminary examination was had upon a
complaint charging defendant with the embezzlement,
as city clerk, of certain moneys of the city of Leaven-
worth. Afterward an information was filed containing
several counts, each charging the embezzlement of the
same moneys at the same time, and as the property of the
same party, but differing in this: that one charged him
with embezzling as clerk, another as agent, another as
servant, and so on. Held that a special plea that de-
fendant had had no preliminary examination, except
upon the charge of embezzlement as clerk, and that,
therefore, all the other counts should be stricken out,
was properly overruled." And in the body of the opin-
ion it was said: "In reference to these counts, it will be
noticed that they charge the embezzlement of the same
money, at the same time, and as the property of the
same party. The only difference between them is in
the relation which the defendant is charged to have sus-

tained to the party whose money was embezzled.   In one he is called an officer,—its clerk;  in another, an agent; in another a bailee, and so on.   It is the same act—the same wrong—which is complained of in each count."   In the case at bar, the fourth count of the information charged the embezzlement of the same money, of the same party, and at the same time as did the complaint, the sole difference being the manner or method alleged of the commitment of the crime.   It was not a charge of a different offense, but the allegation of the manner in which the crime was committed was varied,—no doubt, to meet a possible contingency in the evidence.   This was allowable.   (*State v. Spaulding, supra*;  1 Wharton, Criminal Law [6th ed.] secs. 424, 425;  7 Ency. Pl. & Pr. 446.)

It is urged that the first count of the information is bad for uncertainty, in that it states that Ezra S. Whitney "did  *  *  *  embezzle and convert to his own use the public moneys of the county."   It is claimed that this alleges the crime to be charged, generally by the use of the term "embezzle," and specifically by the use of the words "convert to his own use."   Of the form and substance of the charge in the first count of the information, it may be said: "Embezzle includes in its meaning appropriation to one's own use, and, therefore, the use of the single word embezzle, in the indictment or information, contains within itself the charge that the defendant appropriated the money or property to his own use."   (*State v. Wolff*, 34 La. Ann. 1153;  *Hamilton v. State*, 46 Neb. 284.)   "Embezzlement" includes "conversion to his own use," and it is proper to use them, in a charge of the crime, connected by the copulative "and."   The same is also true of other words included in the term "embezzle."   (7 Ency. Pl. & Pr. 448.)   That in proof of this charge it might be shown that the money was also converted to the use of another party, would not be repugnant.   It might be to the use or benefit of the person holding the office, and also to the benefit of another.   In

this there would be no inconsistency. It would be but one manner of the commission of the crime charged. (*State v. Manley*, 17 S. W. Rep. [Mo.] 800.) We do not think it can, with soundness, be asserted that the allegations of the count under consideration did not inform the party to be charged, of the crime, with sufficient clearness to enable him to prepare his defense. It was sufficiently definite if it did this.

It is also claimed that the first count of the information is defective because it does not state in specific terms the value of the money averred to have been embezzled. The point here raised has been determined by this court adversely to the contention of counsel for plaintiff in error. In the case of *State v. Knox*, 17 Neb. 683, in considering the sufficiency of the charge of the crime of embezzlement of money, in a complaint, it was said of one of the objections: "That an allegation of value is indispensable. This would be necessary if property or bank bills, not a legal tender, had been embezzled; but, where the allegation is the embezzling of $35 in money, the amount designated expresses the value, the presumption being that it was lawful money." (See *Bartley v. State*, 53 Neb. 310; *Hildreth v. People*, 32 Ill. 36. See also 7 Ency. Pl. & Pr. 432.) The charge in the case at bar was of the embezzlement of a stated number of dollars, and was sufficient.

It is insisted that the fourth count of the information does not state facts sufficient to constitute a crime under the laws of the state. If it does so, it is under the provisions of section 124 of the Criminal Code, a portion of which we have hereinbefore quoted. The argument for plaintiff in error is based, in part at least, on the proposition that this count of the information charges no more than that Mills borrowed the money of the county with knowledge that it was the county's money, and that this is not an offense; and proceeding from this standpoint, among other matters urged in support of the position

taken, states that section 124 of our Criminal Code is largely copied from an act of congress passed in 1846, and that it is a significant fact that the original act of congress has since been amended to include a borrower of public money, from which the conclusion is drawn that the act as originally passed did not include such a party; hence, the amendment; and the further conclusion is drawn in argument that our section, being largely a copy of the original act of congress, cannot, or should not, be construed to include the borrower. We will say here that we can by no means agree that the fourth count of the information charges against the plaintiff in error a mere naked borrowing of the money of Harlan county from its treasurer with knowledge that it belonged to the county. It charges an embezzlement of such money, its misappropriation or unlawful and felonious conversion, and that plaintiff in error did advise and procure the same, or in other words, actively participated by words or deeds in the act charged. But leaving this, at least for the present, if not entirely, we will turn to another phase of the question.

Section 124 of the Criminal Code embodies many of the constituent elements of the act of congress to which reference has been made; but it bears a strong resemblance to, and is, in fact, with some few necessary changes and omissions,—the first to meet a difference in conditions and political subdivisions in this state,—a reproduction of section 15 of an act passed by the legislature of the state of Ohio, April 12, 1858. (2 Swan & Critchfield Revised Statutes 1606, sec. 15.) In the case of *Brown v. State*, 18 O. St. 496, which was a prosecution instituted for an alleged violation of the provisions of said section 15, the indictment contained six counts, of which the first and second were abandoned. On the trial of each of three of the other counts it was charged that the treasurer of one of the Ohio counties had converted the money thereof to the use of Brown, and that Brown aided in the act; and, in each of two of them, that he

22

also participated in the act. In one count it was charged that Brown, by and with the assistance of the treasurer, took the money of the county from the treasury, it being then in the possession of the treasurer. Brown was convicted, and on review in the supreme court it was held: "By the act of April 12, 1858 (2 Swan & Critchfield Revised Statutes, 1606, sec. 15), the party advising, aiding, or participating in an embezzlement of public money, by an officer or person intrusted with it, is himself guilty of embezzlement, although he be not himself an officer, or person intrusted with public money. * * * The crime of advising, aiding, or participating in an embezzlement by a public officer is made by said act a distinct and substantive offense, and the party guilty of it may be put upon his trial and convicted, before the conviction of the embezzling officer." And it was stated in the opinion: "In the first place, it is claimed that the indictment is bad as to Brown, because it does not allege that he was a public officer or person intrusted with public money. The argument seems to be that, as the statute declares the aider or participator guilty of embezzlement, it must refer to, and mean, a person having charge of the public money, or in some way connected with its keeping or control; otherwise, it is said, he could not be guilty of embezzlement. We do not so understand the statute. It is true that the statute makes the act of aiding or participating in embezzlement itself an act of embezzlement. But that is a mere statutory name for the offense. The statute defines two substantive offenses. One is the conversion of public money by the party intrusted with it. The other is the advising, aiding, or participating in the act of conversion by any person. Each act is declared by the statute to be an 'embezzlement' and a 'misdemeanor,' in as unequivocal and direct language as could be employed for the purpose. Its plain declaration is, that 'any person' who advises, aids, or participates in the conversion of public money by a party intrusted therewith, is himself guilty of embezzlement." In section 124 it is

stated: "If any person shall advise, aid, or in any manner participate." This clearly includes all persons—officers or others—intrusted with the custody or care of money or any other funds. The count contained a sufficiently definite and specific charge of an embezzlement as set forth in the section 124 of the Criminal Code; hence it stated a crime known to our law.

It is asserted that instruction numbered 3, especially when that which immediately followed it was read in connection with it, was erroneous and prejudicial. Number 3 was a quotation of almost the whole of section 124 of the Criminal Code, inclusive of the portion in which it is recited that if certain facts are proved of the acts, or failures to act, of the officer or persons who have the collection, care, and disbursement of public money, they shall constitute *prima facie* evidence of the embezzlement. Whether the quotation, in an instruction, of a section or a part or parts of it, in order to convey to the jury knowledge of certain matters stated therein, is the best or proper method to accomplish such purpose, we are not called upon to decide; but there were some statements in the section copied in the instruction, of which it was necessary the jury should have correct information, and the manner in which it was given doubtless served the purpose; but it is urged that all that portion which relates to the acts, or failures to act, of officers, and their weight as evidence had application to the treasurer and no direct application to plaintiff in error or his acts. This is no doubt true; but that Whitney, the treasurer, had been guilty was a necessary portion of the proof in the establishment of the charge against the plaintiff in error; hence it was not improper to instruct the jury in regard to the portion of section 124 relative to evidential matters. But it is further complained that the jury should have been specifically charged, that this portion of the instruction must not be applied to the branch of the case which related directly to plaintiff in error, and the proof as to him, where it was without direct reference to or

connected with that in regard to the treasurer.   It might have been better so to do, but it was not requested to be done by counsel for plaintiff in error.   But, regardless of this fact, the matter given in the instruction to which objection is urged was plain in its import and not obscure in its designation of the persons as to whom it was pertinent;· and we cannot believe that the jury can have been misled or confused by it, or that it was in any degree harmful to the rights of the plaintiff in error.

It is complained that the eighth paragraph of the instructions was erroneous and misleading.   It was as follows:  "The court further instructs the jury that while they must be convinced of the guilt of the defendant beyond a reasonable doubt, from the evidence, in order to warrant a conviction, still the proof need not be direct testimony of persons who saw the offense committed. The acts constituting the crime may be proved by circumstances and any other competent evidence."  It is said in argument that the effect of this was to allow the jury to consider any circumstances regarding the alleged offense, whether shown in evidence or not.   It was proper to instruct the jury in this case relative to the significance or weight to be given to any pertinent. circumstances of which there was proof.   Whether the in-· struction was carefully prepared and worded in the particular portion indicated by the objection, we need not determine.   In an instruction which preceded this one in the order of giving, and also in one which followed it, the jury was specifically directed that it must be governed by what had appeared in evidence in the cause, in view of which we cannot believe that the jury was misled by any statement contained in paragraph 8.

Objections are urged against paragraphs 9 and 10 of the charge to the jury.   The first of these was devoted to stating certain questions to which the jury was to seek answers in the evidence, and if in the affirmative, the verdict of guilty was to follow, and·if in the negative as to either of the stated propositions, the verdict was

directed to be, "Not guilty." This instruction referred to the first count of the information. The one numbered 10 was much the same in terms except that it was framed with reference to the fourth count of the information. It is possibly true that either of these paragraphs of the instructions, detached from the others, and so read and construed, may be in some respects and in some degree defective. Indeed, it is questionable whether instructions framed as questions—as were these—to be answered by the jury, and in the event of one answer the jury instructed to return a verdict of guilty or, on an opposite finding, the opposite verdict, are in cases of this nature proper, or should be given; but these, when read and construed in connection with the others given, could not have prejudiced the rights of the plaintiff in error. Of the failure to state in them that the findings must be from the evidence, it may be said that it is not necessary, though it may be better, that this should be stated in every instruction, or in every proposition. It is sufficient if the jury are informed that all the findings must be from the evidence. This was done in the instructions in this case.

It is claimed that instruction number 12 was erroneous and wholly unwarranted. It reads as follows: "You are instructed that before you can find defendant Benjamin D. Mills guilty of the offense charged in the information, you must find from the evidence beyond a reasonable doubt that said sums were not deposited in said bank under the depository bond, or if so deposited they, or some of them, were drawn out of said depository by said Benjamin D. Mills upon the checks of Ezra S. Whitney, as treasurer of said Harlan county." When this is read in connection with the one which immediately precedes it in the charge to the jury, in which the jury was informed of the provision of the law in regard to banks furnishing bonds and being designated by the county boards as depositories for county funds, and in the light of the evidence relative to the subject, it is

apparent that the reference in instruction numbered 12 was to a bank or banks so designated, and the import of its reference to said banks is clear and pertinent. It is further insisted that this instruction was erroneous, in that it told the jury that, as one of the elements of the guilt of plaintiff in error, if it appeared that the money had been deposited in a designated bank, it must further appear that it was drawn therefrom by plaintiff in error by means of checks of Ezra S. Whitney as county treasurer of Harlan county, in that it did not refer to the fact that the money might have been drawn out of the bank or banks of deposit on checks issued to pay debts of the county evidenced by its warrants. This portion of the instruction would have been prejudicially erroneous if there had been any evidence to the effect that the money was drawn in payment of debts of the county, or rather if there had not been such a condition of the proof in the case as precluded any idea, or even an inference, that any of this money was drawn for payment, or paid on properly evidenced or any indebtedness of the county. In view of the status of the evidence on this point, there was no available error in giving the instruction.

Complaint was made of the giving of the fourteenth paragraph of the charge to the jury, which reads as follows: "You are instructed that the receipts and other writings introduced in evidence in this case are *prima facie* evidence of the receipt of the money, and are not conclusive, and may be qualified and explained by other competent evidence; and in determining the truth in relation thereto you will take into consideration all the evidence introduced bearing upon this point." It is insisted that there were some of the writings to which this paragraph of the instructions evidently referred, which could not be considered as, in any manner or degree, tending to establish the guilt of the plaintiff in error. If competent to be in evidence,—and we must presume in this discussion that they were,—they must have been so as matters of proof. In the whole case it must be

borne in mind that to establish the commission of the crime with which the plaintiff in error was charged, it was also necessary to show that Treasurer Whitney had been guilty of embezzlement; and these writings were, some of them, doubtless introduced in the branch of the proof which had a direct bearing on the question of Whitney's commission of the crime, and were thus a portion of the proof on the charge against the plaintiff in error, and it was proper to instruct the jury in regard to them; but it is further urged that the jury was told by this paragraph what weight might be accorded these items of the proof, and the burden was cast on the plaintiff in error of qualifying or explaining them. The court in the instruction did no more than inform the jury of the significance of the evidence to which reference was made, merely stated its effect, and that it was not conclusive in its nature, and might be qualified or explained. There was nothing unfair or erroneous in such action. It was entirely proper. Without such an instruction, the jury might, to the prejudice of the plaintiff in error, have considered these matters as conclusive; nor did the court by its instructions cast the burden on the plaintiff in error of qualifying or explaining these evidential writings. He stated that it might be done by other competent evidence, not from any particular person or source, but that came into the cause from any source. This was the true meaning of the instruction and it was without error.

It is urged that the court wholly failed to instruct the jury in regard to one material fact,—an element of the crime charged. We think a close scrutiny of the whole of the instructions will disclose that this criticism is not wholly merited. There are portions of them where some reference to it would have been proper, and should have been made; but, in view of the state of the evidence relative to the fact, the failure, where it occurred in the instructions, could have no other effect than a non-direction. It devolved upon the counsel for plaintiff in error

to prepare and submit proper instructions, failing in which there is no ground for reversal. (*Pjarrou v. State*, 47 Neb. 294; *Hill v. State*, 42 Neb. 503; *Johnson v. State*, 53 Neb. 103.) It may be further said that in regard to the fact as to which it is claimed there was a failure to instruct, there was no dispute or conflict in the evidence. while not admitted it was established and undisputed; hence there could have been but one finding as to it if based on the evidence, and if there was error in the failure to instruct, it was without prejudice.

It is assigned for error that the trial court admitted in evidence a receipt for $6,000, which appears in the record as Exhibit F. The ground of the complaint is that it was not properly identified,—that it was not shown that it was written or signed by plaintiff in error whose receipt on its face it purported to be. During the trial there was produced an envelope which was fully identified as having been received by the treasurer by mail through the post office, and its enclosures, one of which was a letter, was fully identified as being the handwriting of the plaintiff in error. The other enclosure was the receipt in question. The letter was as follows:

"STATE BANK OF REPUBLICAN CITY, NEB.

"Correspondents: American Exchange National Bank, N. Y.; Merchants National Bank, Omaha, Neb.; First National Bank, Lincoln, Neb.

"REPUBLICAN CITY, NEB., Jan. 2, 1894.
"E. S. Whitney, Treas., Alma, Neb.—DEAR SIR: Herein I hand you rect. for the $6,000. I do not believe we had better put this on deposit for it will raise such a howl as we never heard.
"Yours as ever,            ·            MILLS."

The address to Treasurer Whitney on the envelope was shown to be the handwriting of the plaintiff in error. The receipt read:

"STATE BANK OF REPUBLICAN CITY, NEB.

"Dec. 30, 1894.

"Received of E. S. Whitney, treas., six thousand dollars to hold for deposit.                 B. D. MILLS.

"$6,000."

From all this it appears that the letter was written to the treasurer by plaintiff in error addressed by him and received by the treasurer through the post office. The letter had the receipt enclosed with it, and it was referred to therein and recognized by the writer of the letter, the plaintiff in error, as his receipt. This, we think, constituted a sufficient identification for its reception in evidence.

For the plaintiff in error there was presented a motion for a new trial, one of the grounds of which was newly-discovered evidence. This branch of the motion was supported by affidavit. There were filed for the state some affidavits to controvert the facts presented for plaintiff in error in the affidavit in support of the motion. The motion was overruled, and such action, as to this branch thereof, is assigned for error. After an examination of these affidavits, we cannot say the court erred. Its reason for overruling the motion is not in the record, but in view of all the facts as set forth in the several affidavits, it cannot be said that there was newly-discovered evidence which plaintiff in error could not with reasonable diligence have discovered and produced at the trial. This must appear. (See Criminal Code, secs. 490, 492.)

It is also urged that the evidence was wholly insufficient to sustain the verdict. It would serve no useful purpose to quote it at length or summarize it in a statement here. After a careful examination of it we must say that while, from it, it might be said that the money alleged to have been the subject of embezzlement may have, a portion or all of it, gone into the hands and care of the plaintiff in error for the probable purpose of being deposited in the bank, a designated depository for such

funds, it is clear that subsequently this purpose was changed, and the money of the county was, in direct violation of the law on the subject (Criminal Code, sec. 124), allowed by the treasurer to be retained by the plaintiff in error for use, and not for deposit, and this by and through the advice and procurement of the latter. That such subsequent action by which the money was so retained by plaintiff in error was in pursuance of an agreement to such effect, between the parties, we think the evidence warranted such conclusions, and, if so, it was sufficient to sustain the verdict rendered. It follows from the conclusions herein reached that the judgment must be

AFFIRMED.