DORA A. KNAPP *v.* CAROLINE J. WING.

May Term, 1900.

Present :   ROWELL, TYLER, MUNSON, START, THOMPSON and WATSON, JJ.

Opinion filed August 6, 1900.

*Alienation of husband's affections—Loss of consortium—*A woman may maintain an action for the alienation of her husband's affections, whereby she is deprived of the conjugal society, aid and support of her husband.   Loss of *consortium* is the gist of the action.

*Examination of witnesses—Particular question at particular time—Legal right how preserved*—A party who is a witness is deprived of no legal right in not being permitted to answer a particular question at a particular time, if he is subsequently allowed to testify to the relevant matter to which the question relates.

*Evidence—Influence of property to alienate affections—Amount of property*—In an action by a woman against the aunt of her husband for the alienation of his affections, it was proper to introduce evidence tending to show that the aunt attempted to use the influence of her property to effect the alienation, and to show in connection with such testimony the amount of the aunt's property.

*Evidence to show malice*—In an action by a woman against the aunt of her husband for the alienation of her husband's affections by the aunt, a declaration of the aunt not made in the presence of the plaintiff's husband to the effect that a child of the plaintiff, born during the existence of the marriage, was illegitimate, was admissible in evidence as tending to show malice.

*Cross-examination—Examiner not required to put witness on his guard—Purpose of inquiry need not be disclosed*—A cross-examiner is not bound to explain the relevancy of an expected answer, nor to state what he expects to show by the cross-examination. To oblige him to do so might defeat the purpose of the cross-examination.

*The rule of State v. Nooks, 70 Vt. 247, not applicable to cross-examination*—The rule of State v. Nooks, 70 Vt. 247, that in order to reserve an available exception to the exclusion of testimony, an offer must be made of the testimony which the witness will give if permitted to testify, and an exception taken to the exclusion of the testimony so offered, is not applicable to cross-examination.

*Inquiry on cross-examination as to subject of correspondence—Inquiry to show knowledge of subject-matter—Correspondence itself immaterial*—An inquiry, on the cross-examination of a party, as to the subject of a correspondence had by him with another, put with a view to charging him with knowledge of the subject-matter at the time of the correspondence, is proper without the production of the correspondence itself.

ACTION ON THE CASE in which the plaintiff sought to recover for the alienation of her husband's affections, whereby she had been deprived of his aid, comfort and society. Plea, the general issue. Trial by jury, Rutland County, September Term, 1899, *Taft*, C. J., presiding.

It appeared that the defendant was an aunt of Rollin F. Knapp, the former husband of the plaintiff whose affections were alleged to have been alienated. The plaintiff testified that she had heard the defendant say to her husband that he should never have a cent of her property as long as he lived with the plaintiff, and she was permitted to testify to declarations relating to the amount of the defendant's property, made by the defendant to the plaintiff's husband. One Mrs. Farr, a witness called by the plaintiff, testified that the defendant had told the witness when the plaintiff's husband was not present that she didn't think a child born to the plaintiff during the subsistence of the marriage between the plaintiff and her husband was legitimate.

After verdict and before judgment the defendant moved in arrest on the ground that the declaration did not state a cause of action.

*Butler & Moloney* for the plaintiff.

*Joel C. Baker* and *E. J. Ormsbee* for the defendant.

TYLER, J.  I.  The declaration states a cause of action, for it alleges loss of *consortium* as the consequence of the defendant's wrongful acts, and the plaintiff can maintain an action in her own name under V. S. 2647. *Story and wife* v. *Downey and wife*, 62 Vt. 243. The marriage contract between the plaintiff and her husband conferred upon her the right to his *consortium,* and the deprivation of that right by the acts of the defendant was a wrong for which the law should afford a remedy.

It was a maxim of the common law that for every wrong the law provided an adequate redress; but the law was consistent in denying to the wife an action against another woman for debauching her husband, or for alienating his affections from and depriving her of his society and support, for she had no legal existence separate from her husband, and consequently could not hold separate property. If such an action had been maintainable, it must have been brought in the husband's name, and a judgment, if recovered, would have been for his benefit, because of the theory that

the wife's legal existence was merged in that of her husband, and that she had no property in his society and assistance. It is now nearly a universal rule in those states in this country, where the common law disabilities of married women have been removed, that this kind of action is maintainable. It is said in Cooley on Torts, 228, note: "We see no reason why such an action should not be supported, when, by statute, the wife is allowed, for her own benefit, to sue for personal wrongs suffered by her." Bigelow on Torts, 153; Bishop on Mar. and Div. sec. 1358.

It was said by the court in *Daley* v. *Gates*, 65 Vt. 591: "If an action of this kind can be maintained by a wife, concerning which we are not called upon to express an opinion, the cause of action is the wrongful deprivation of the plaintiff of that to which she is entitled by virtue of the marital relation, namely, the *consortium*, or the conjugal society, affection, aid and assistance of her husband." The only question in that case was whether a new count was for the same cause of action as the original declaration, which charged that the defendant had enticed away the plaintiff's husband *per quod amisit*, the new count charging criminal conversation, with the same *per quod*, and it was held to be for the same cause and for the reason that the injury complained of in each count was one and the same, namely, loss of *consortium*, the new count being merely the statement of another way in which the injury was committed, the identity of the cause of action being preserved. This doctrine is fully recognized in *Fratini* v. *Caslini*, 66 Vt. 273.

It is denied in *Doe* v. *Roe*, 82 Me. 503, and in *Morgan* v. *Morgan*, 92 Me. 190, that the wife is entitled to this action, even in case of her husband's adultery, and it is held that the action is allowed to the husband for that cause only upon the ground that the wife's infidelity may impose upon her husband the support of another man's child and throw suspicion upon the legitimacy of his own children. This holding we are not inclined to follow.

Mr. Freeman, in his notes to *Clow* v. *Chapman*, 125 Mo.
101, 46 Am. St. R. 468, says that Maine and Wisconsin stand
alone in maintaining the above doctrine, and he states the general
rule, that the action is maintainable when there is loss of *con-
sortium*, and that it is as available to the wife, unless she is under
the common-law disability, as it is to the husband. The law is
well stated in Schoul. on Husb. & Wife, sec. 65 : "To entice
away, or to corrupt the mind and affections of one's consort is a
civil wrong for which the offender is liable to the injured husband
or wife." See *Foot* v. *Card*, 58 Conn. 1, 18 Am. St. R. 258;
*Seaver* v. *Adams*, 66 N. H. 142, 49 Am. St. R. 597; *Gernerd* v.
*Gernerd*, 185 Penn. St. 233, 66 Am. St. R. 646 and notes.

II. The plaintiff introduced evidence tending to show that
the defendant told the plaintiff's husband that the plaintiff was
not fit to be his wife, nor the mother of his children, and made
other derogatory statements to him about her. The defendant
offered evidence tending to show that on an occasion the plaintiff
went to her house and struck her a severe blow in the face while
the defendant was standing in her door talking with the plaintiff's
husband, and that a week later the plaintiff went to the defend-
ant's house and assaulted her with a stool and injured her, and
that the conversation which the plaintiff's evidence tended to
show took place that evening in the defendant's house between
the defendant and the plaintiff's husband was after the assault
with the stool and while the defendant was suffering from it;
that the conversation was not what the plaintiff claimed it was,
and that it was in consequence of that assault. The defendant
was allowed to testify, without objection, to the first assault.
Defendant's counsel then asked the defendant the question,
"Did anything happen during the coming week ?" which the
court excluded. Although the defendant was not permitted to
describe the assault with the stool, in detail, she did subsequently
testify that after it occurred, on the same evening, she sent for
the plaintiff's husband and had the conversation with him which
the plaintiff and her witness testified to have overheard; that she

did not then say what the plaintiff had testified to, but that she did advise a separation by means of which a divorce might subsequently be obtained, and that what she then said was from fear of the plaintiff caused by the assaults. The defendant was therefore deprived of no right by not being permitted to answer the question above recited.

III. It was not error to admit evidence tending to show that the defendant attempted to use the influence of her property to alienate the husband from the wife, and in that connection to show the amount of property she possessed.

IV. The testimony of Mrs. Farr, in substance, that the defendant said to her, when the plaintiff's husband was not present, that the child was illegitimate, was admissible as tending to show malice.

V. The plaintiff's evidence tended to show that after her return from Burlington the defendant made remarks to the plaintiff's husband about the paternity of a child to which the plaintiff subsequently gave birth ; that the defendant asked him if he had roomed with the plaintiff so that he had an opportunity to be the father of the child, and that upon his replying that he had she said he could not even then be sure it was his. The apparent purpose of this evidence was to have the jury understand that the defendant implanted in the husband's mind the idea that the child was illegitimate. The defendant then proposed but was not permitted to cross-examine the plaintiff with a view to show by her that the legitimacy of the child had been a subject of correspondence between the plaintiff and her husband while she was in Burlington. It was clearly competent for the defendant to cross-examine the plaintiff upon this subject and to show by her, if she could, that the defendant did not originate the charge of the child's illegitimacy, but that the plaintiff and her husband had discussed the matter some time previously. The ruling deprived the defendant of a legal right. The plaintiff claimed that this alleged slander was one means used by the defendant to separate her husband from her, and it was compe-

tent to cross-examine her to show that the story had a prior origin, and that the husband had knowledge of it prior to the statements made by the defendant.

It was held in *State* v. *Nooks*, 70 Vt. 247, that, " to reserve an available exception to the exclusion of the testimony of a witness, an offer must be made stating the testimony the witness will give if permitted to testify, and an exception taken to the exclusion of the evidence so offered. An exception to the exclusion of a question only, is not sufficient." This rule applies to the examination of a party's own witness for the reason that he is supposed to know what his witness will testify to. But, to be compelled to state what one expects to show by the cross-examination of his adversary's witness would often defeat the purpose intended by putting the witness on his guard. Besides, the examiner does not always know what he may reasonably expect to bring out in the cross-examination of a witness. The rule is and should be that the cross-examiner is not bound to explain the relevancy of the answer expected. 8 Ency. of Pl. & Pr. 114.

The plaintiff's counsel contend that if the correspondence was material, the letters should have been produced as the best evidence, and they raise the further point that no offer was made to prove a fact. The correspondence itself, was not material. The question did not call for the contents of letters, but it asked upon what subject they were written. The previous discussion between the plaintiff and her husband, implying knowledge, was the fact that the defendant sought to show.

For the error in denying the right to cross-examine,

*The judgment is reversed and cause remanded.*