[Civil No. 2596.   Filed September 19, 1927.]

[259 Pac. 676.]

G. FISCHER, Appellant, v. A. T. HAMMONS, Superintendent of Banks of Arizona, as Receiver of THE BANK OF JEROME, an Arizona Corporation, Insolvent, Appellee.

Mr. J. Gardner Scott, for Appellant.

Mr. John L. Sullivan and Mr. John A. McGuire, for Appellee.

LOCKWOOD, J.—This is an appeal from an order denying the petition of G. Fischer, hereinafter called appellant, to have certain promissory notes signed by him, and held by appellee, A. T. Hammons, superintendent of banks, as receiver of the Bank of Jerome, an insolvent banking corporation, hereinafter called the bank, declared void and of no effect as to him, and to have his signature thereon canceled.

The petition, after setting up the formal matters necessary, alleges, in substance, as follows: At the time the bank closed its doors, appellant was indebted to it on a note of his own in the sum of $1,000, but had deposited with the bank enough to pay said note and leave a balance of $3,048.88. The receiver also held three notes, payable to the bank, one for $7,500, signed by appellant and one John D. Johnson; one for $4,000, signed by appellant and F. A. Hemphill, Peter Gordon and Johnson; and a third for $1,391.62, signed by appellant, Gordon, and Johnson. Appellant presented his claim for the balance due on his deposit, with affidavits attached repudiating any liability on the notes, and alleging they were obtained by the bank through the fraud of its cashier, Paul Deming, which claim was by the receiver approved as an offset on the three notes above described. Thereafter appellant filed suit on the claim, requesting that the receiver be required to plead as an offset thereto the three notes. The receiver refused in said suit to plead the notes or to make any claim or demand therein that they be paid. Judgment was rendered for the sum of $3,048.88 in favor of appellant against the receiver, and it was ordered that the judgment be recognized as a general claim against the assets of the bank and paid as other general claims. Thereafter appellant demanded that the receiver cancel his name on the three notes and acknowledge that he was not liable thereon, and, this demand being refused, brought this action.

There was an allegation that the uncanceled notes in the hands of the receiver were a menace to appellant, and that his signatures thereto were void for the reasons set forth in the affidavits, and a prayer that the court order them canceled, so far as appellant was concerned. The receiver was cited to appear and answer the petition and a demurrer was filed by him, setting up five objections to the petition. Appellant moved to strike the demurrers, and the two matters were argued together and submitted. It does not appear from the record whether they were ever formally disposed of, but some months later a minute order was made denying the petition, and it is from this order the appeal was taken.

So far as the record before us shows, we are unable to determine whether the ground of the court's action was a failure of appellant to amend his petition after the motion to strike was denied and the demurrer was sustained, or whether there was an answer filed and a hearing on the merits. Both parties in their briefs have presented the case on the former theory, and we have therefore assumed such to be the fact. There are some six assignments of error, which we will consider in accordance with the legal questions raised. The first is that since the initial document filed by appellant, though entitled a "petition," is in reality a motion and duly verified, no demurrer lies thereto and as no verified answer was filed, the trial court should have accepted the facts therein set up as true, under paragraph 477, Revised Statutes of Arizona 1913, Civil Code.

Whatever the so-called petition may have been technically, it was apparently treated as a complaint by both parties in the trial court, and the case was presented and disposed of there on the theory that it was such. Appellant cannot for the first time in this court urge that it was a mere motion. *Tevis v. Ryan*, 13 Ariz. 120, 108 Pac. 461; affirmed 233 U. S.

273, 58 L. Ed. 957, 34 Sup. Ct. Rep. 481. It was therefore proper to raise by means of a demurrer any objections appearing on the face of the petition, and, of course, it is never necessary or even proper to verify a demurrer.

The demurrer presents five specific grounds, and if any one of them be well taken the action of the trial court would ordinarily be upheld. The first four, however, are formal in their nature, and since both parties have requested, both in their briefs and on oral argument, that the appeal be determined on its merits so as to minimize further litigation, we will dispose of the matter on the fifth, which is that the complaint does not state facts sufficient to constitute a cause of action. Assuming for the purpose of the demurrer, therefore, that appellant had the right in this form of proceeding, and without the consent of court or making the other signers of the notes involved parties thereto, to have determined whether or not such notes should be canceled as to him, we have two questions to answer. The first may be thus stated:

"Has appellant properly pleaded a judgment of such a nature as to establish conclusively that by such judgment appellee is barred from a recovery on the notes in question?"

The petition on this point reads as follows:

"That thereupon, and in good season, to wit, May 15th, 1926, and leave of court having been first obtained, petitioner filed action in the above-entitled court upon said claim; and requested that said receiver, in the event he believed petitioner to be liable upon said notes, or either of them, to plead the same defense of his said action as an offset thereto, that said issue might be determined therein; but, that notwithstanding said request, said receiver did not interpose said notes, or either of them, in defense of petitioner's said claim, . . . that said defendant did not put in an appearance until June 26th, 1926,

and that upon making such appearance failed to set up said notes, or either of them, or to make any claim or demand whatsoever thereon. . . . That thereafter . . . your petitioner secured judgment against said receiver in said action, . . . which judgment is docketed in . . . the records of this court . . . wherein it was adjudicated and decided that said sum of $3,048.88 is justly due your petitioner, and ordered, adjudged, and decreed that petitioner have . . . judgment against said receiver in said sum; and . . . that said judgment be recognized as a general claim against the assets . . . of said bank . . . and that the same be paid as is, or may be, other general claims.''

It is the claim of appellant that appellee, having had the right to litigate in said suit the question of the liability of appellant on said notes and having failed to do so, cannot in another action maintain that he is liable thereon. Appellee, on the other hand, while admitting that a judgment is, as to the particular action in which it is rendered, a bar not only as to every question litigated, but as to all which could have been litigated, contends that where suit is later brought on an entirely different cause of action, the judgment is merely an estoppel as to the matters actually litigated, and not as to those which could have been made issues, but which were not.

We are of the opinion that the true rule is well stated as follows:

''The rule is often stated in general terms that a judgment is conclusive not only upon the questions actually contested and determined, but upon all matters which might have been litigated and decided in that suit; and this is undoubtedly true of all matters properly belonging to the subject of the controversy and within the scope of the issues, so that each party must make the most of his case or defense, bringing forward all his facts, grounds, reasons, or evidence in support of it, on pain of

being barred from showing such omitted matter in a subsequent suit; and it is also true that where the second suit is upon the same cause of action all matters which might have been litigated are conclusively settled by the judgment; and that generally the estoppel applies where defenses which were available in the first action but not then set up are sought to be used in a second action either by way of defense or as the foundation of a claim for relief. But the weight of authority is that where the second action, although between the same parties, is on a different cause of action, the judgment is not conclusive on all matters which might have been litigated in the former action, but only as to such points or questions as were actually in issue and adjudicated thereon.'' 34 C. J. 909.

Appellant's suit in the case relied on by him was for a balance due on a deposit. The judgment pleaded, so far as set up in the petition, determined only what that balance was, nor was the issue of the validity of the three notes ever presented to or settled by the trial court. On the contrary, appellant sets up affirmatively that appellee refused to join issues thereon, though he was requested to do so, and appellant, of course, could not by himself plead an item as a set-off and then repudiate it in the same breath.

The general rule is that a set-off may be pleaded, or not, at the option of the defendant; and that, if not pleaded, the right to sue upon it as an independent cause of action or to rely upon it in another action by the same defendant is not affected or impaired by a judgment against the defendant. 34 C. J. 864; *Roach* v. *Privett*, 90 Ala. 391, 24 Am. St. Rep. 819, 7 South. 808.

It is true that where the subject matter of the set-off is so involved in the determination of the issue in the former action that the judgment therein necessarily determines the facts which defendant

would have to establish to maintain his set-off, the latter is barred. *Paccalona* v. *Peninsula Bank & Lumber Co.*, 171 Mich. 605, 137 N. W. 518. But such is not the case herein. The issue tendered by appellant to establish his claim to a balance due from the receiver on his deposit in no way involved the validity of the three notes, nor were any of the facts necessary to prove his case material in any action which might later be brought on the notes.

It is urged, however, that the receiver by admitting the amount due as balance on the deposit and offering to credit it on the notes converted the whole matter into an open account, so that his only remedy was on such account, and, appellant having sued thereon, the former was bound to plead the notes as items of the account or they were waived. We cannot agree with this view of the receiver's actions. His offer was to accept the balance which he admitted was due appellant on his deposit as a partial payment of the three notes. This offer was never accepted by appellant, but was, on the contrary, repudiated. An "open and mutual account" is generally taken to mean one where there are running or concurrent dealings between the parties, which are kept unclosed with the expectation of further transactions, nor is an express contract, whether oral or written, which defines the duties and liabilities of the parties as a rule an open account. *Connor Livestock Co. et al.* v. *Fisher, ante*, p. 80, 255 Pac. 996. Even had appellant accepted the offer of the receiver, the notes would not have become a part of such an account. They would have still remained "an express contract" defining the duties and liabilities of the parties" *on which a payment had been made.* We are of the opinion that no judgment was pleaded by appellant which was *res adjudicata* as to whether or not he was liable on the notes.

The other question, and the one going to the merits of the matter is, "Did appellant set up what would be a good defense to an action on the notes?" This defense appears in the affidavits attached to the petition. Technically, affidavits attached to a complaint are not a part thereof for the purpose of demurrer. *State ex rel. Young* v. *Superior Court,* 14 Ariz. 126, 125 Pac. 707; *McPherson* v. *Hattich,* 10 Ariz. 104, 85 Pac. 731; *Greenlee Co.* v. *Cotey,* 17 Ariz. 542, 155 Pac. 302. Since appellee has waived this point, however, we consider them as though contained in the body of the complaint. The first refers to the $7,500 note and alleges:

That appellant "signed the same at the instance and request of Paul H. Deming, who was then the cashier of said bank; that said Deming, . . . in order to induce affiant thereto, stated and represented to affiant that he, Deming, would also secure the signatures of three other persons thereto, . . . and that said note would not be complete nor delivered to said bank, nor would affiant be bound thereby, unless each of said persons also signed the same; that affiant believed said statements . . . and relied solely thereon . . . and solely upon said terms . . . signed the same; that the said Deming failed to secure the signature of any said persons thereto except (naming one); that affiant received no money or other consideration therefor."

The second deals with the notes for $4,000 and $1,391.62, and sets up:

"That at all the times herein one Paul H. Deming was . . . the cashier of said bank. That during said time . . . said bank was . . . trustee of the Black Gold Royalties . . . that said Deming was the actual manager . . . of said corporation, and that affiant was . . . a . . . stockholder . . . of said corporation. That . . . said Deming represented to affiant it was necessary that he, Deming, secure another signature to each of three certain promissory notes ; . . . to wit, four thousand dollars ($4,000), and thirteen hundred

ninety-one and Sixty-two One Hundredth Dollars ($1391.62), . . . and requested affiant to sign the same; that . . . in order to induce affiant to do so, said Deming stated . . . that the signing thereof was but a temporary expedient and a mere form; that affiant would not at any time be called upon to pay any of said notes or any part thereof; that each of said notes, if not paid out of the funds of the corporation, would be taken care of by one. . . . That affiant believed said statements . . . and relied solely thereon; that by reason thereof, . . . affiant signed said notes; that affiant never at any time, or at all, received any money or other consideration whatsoever therefor. . . . ''

So far as the defense set up to the notes for $4,000 and $1,391.62 is concerned, it is, in substance, that Deming, who was cashier of the bank, told appellant that it was only a form, and that the bank would never call on appellant to pay the note. Appellant was merely an accommodation party, it is true, but a promise made by the cashier of the bank that he would not be called on to pay the note would not release him from an obligation to do so. Paragraph 4174, Rev. Stats. Ariz. 1913, Civ. Code; *Hughes* v. *Riggs Bank*, 29 Ariz. 44, 239 Pac. 297; *Albuquerque Nat. Bank* v. *Stewart*, 3 Ariz. 293, 30 Pac. 303.

Nor can appellant as against these notes set up that notice of the alleged fraudulent conduct of Deming was imputed to the bank, and that, therefore, it was a trustee *ex maleficio*. Admitting that, under the doctrine of *Hughes* v. *Riggs Bank*, *supra*, notice to Deming was notice to the bank, appellant's own affidavit establishes conclusively that he was a party to a transaction which he must have known was intended to deceive or defraud someone. He cannot, when he finds *he* was the one deceived, rely on the equitable defense of fraud. ''He who comes into equity must come with clean hands.'' The petition did not state a defense to the two notes.

The $7,500 note stands in a different category. Ordinarily, when A. signs a note at the request of B., with the agreement that it will not be delivered until C. and D. also sign, the note is not valid in the hands of a holder with knowledge of the facts, if C. and D. fail to sign. 8 C. J. 207. The affidavit does not allege actual knowledge by the bank of such agreement by Deming, but was it implied? That would depend on whether during the transaction Deming either was acting, or represented that he was acting, for the bank in securing appellant's signature, or whether he was, to appellant's knowledge, acting for himself therein. If the former, then the knowledge was imputed, even though, as a matter of fact, the representation was untrue. *Hughes* v. *Riggs Bank, supra.* If the latter, then it was not.

The petition therefore did on its face set up a defense which would be available against the note for $7,500, unless upon a proper answer and evidence it should appear that Deming, to appellant's knowledge, was acting for someone other than the bank in obtaining the latter's signature.

Since it was agreed that the court should decide the appeal on its merits, we have not passed upon, though we have examined, other points, formal in their nature, which might otherwise have affected the decision.

The order denying the petition is reversed and the cause remanded, with instructions to overrule the demurrer to the petition, with leave to appellee to answer, and that such further proceedings be taken as may be proper in accordance with the views expressed herein.

ROSS, C. J., and McALISTER, J., concur.