[Criminal No. 720.   Filed December 15, 1930.]

[293 Pac. 976.]

W. H. GIBBS, Appellant, v. STATE, Respondent.

274

Mr. Lynn D. Smith, Messrs. Richey & Richey, and Mr. John W. Mayes, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Riney B. Salmon, Assistant Attorney General, and Mr. Claude Smith, for the State.

ROSS, J.—The defendant was convicted of embezzlement. He appeals from the judgment and the order overruling his motion for a new trial. He complains of the information not stating facts sufficient to constitute a public offense, and we therefore set out the charging part thereof:

"That on or about the said 9th day of June, 1929, one M. A. Barker was the clerk, agent and servant

of the Calumet and Arizona Mining Company, a corporation, (New Cornelia Mines at Ajo, Arizona,) and by virtue of his employment as such clerk, agent and servant, the said M. A. Barker was intrusted with, and there came into his possession, custody and control, the following described property, to-wit: One Hundred Five (105) sacks of cement of the value of Ninety-one and 35/100 Dollars ($91.35) gold coin of the United States of America said cement being then and there the personal property of the said Calumet and Arizona Mining Company, a corporation; that the said M. A. Barker, after said property had come into his care, custody and control, as aforesaid, and while having it in his care, custody and control as such clerk, agent and servant did then and there wilfully, unlawfully, fraudulently and feloniously embezzle said property and appropriate it to his own use and to a use and purpose not in the due and lawful execution of his trust as such clerk, agent and servant; that said defendant W. H. Gibbs, on the date aforesaid and divers dates theretofore, and in said precinct, county and state, did wilfully, unlawfully, fraudulently and feloniously, being present and not being present at its commission advise, encourage, aid, abet and procure, the said M. A. Barker to commit said crime of embezzlement in the manner and form and by the means aforesaid; that the said M. A. Barker committed said crime in pursuance of, by reason of, and on account of said advice, encouragement, aid, abetting and procurement of said defendant W. H. Gibbs; that said defendant W. H. Gibbs is, therefore, guilty of the commission of said offense, contrary to the form, . . . '' etc.

His assignments 1, 2, 3, 4, 5 and 8 are directed at the sufficiency of the information. The point made is that the information fails to show that defendant Gibbs sustained any fiduciary relation to the Calumet & Arizona Mining Company, and that, under the statute, section 4765 of the Revised Code of 1928, such relation must exist before the party can embezzle property.

That such is the law we believe to be well settled. *Phelps* v. *State,* 25 Ariz. 495, 219 Pac. 589. This provision of the law, that a trust relation must exist, we think must be construed in connection with section 4491, Revised Code of 1928, which abolishes the distinction between accessories before the fact and the party who actually commits the crime. That section provides that all persons concerned in the commission of a crime, whether it be a felony or a misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, are principals in any crime so committed.

The information charges that defendant Gibbs did aid, abet, advise and encourage Barker to commit the crime, and he is, therefore, if anything, a principal. In the annotation to *Quillin* v. *State,* 5 A. L. R. 773, at page 782 (79 Tex. Cr. Rep. 497, 187 S. W. 199), is found this statement:

"There are some offenses which are so defined by statute or by the common law that they may be committed only by certain persons or classes of persons. Nevertheless, a person who is not within the class of those by whom the crime may be directly perpetrated may, by aiding and abetting a person who is within the scope of the definition, render himself criminally liable."

This statement is well sustained by cases from many jurisdictions. While the definition of the crime of embezzlement confines the offense to fiduciaries and the like, a person not within that category may be convicted of aiding or abetting the commission of the crime. *Bishop* v. *State,* 118 Ga. 799, 45 S. E. 614; *State* v. *Rowe,* 104 Iowa 323, 73 N. W. 833; *State* v. *McCartey,* 17 Minn. 76 (Gil. 54); *Brown* v. *State,* 18 Ohio St. 497; *Mills* v. *State,* 53 Neb. 263, 73 N. W. 761; *Quillin* v. *State, supra.* We think,

when the provisions of the criminal statutes are construed together, it is apparent that one may, by aiding, advising and counseling the commission of a crime, become a principal in such crime, even though he could not under the statute have committed the offense himself.

The demurrers to the information, as also the objection by the defendant to the introduction of any evidence thereunder, were properly overruled.

It is contended that the verdict should not have been permitted to stand, for the reason that the prosecution failed to produce evidence to prove that the Calumet & Arizona Mining Company was a corporation either *de facto* or *de jure*. In *Phelps* v. *State, supra,* we held that it was necessary to allege in an information charging embezzlement that the property claimed to have been embezzled must be that of a legal entity, such as a person or corporation or company. The present information meets that requirement, and that case, although relied upon by defendant, is no authority for the point that he now makes. Here the legal capacity of the employer is properly alleged. It would seem that, if it is necessary to allege ownership in a legal entity capable of holding property, it is also necessary to prove it. 20 C. J. 480, § 75; *People* v. *Leonard,* 106 Cal. 302, 39 Pac. 617; *Higbee* v. *State,* 74 Neb. 331, 104 N. W. 748; *Calkins* v. *State,* 18 Ohio St. 366, 98 Am. Dec. 121. The defendant did not raise this point in the trial. He made no motion for a directed verdict for failure of evidence on that issue. Apparently all the parties in the trial proceeded upon the assumption that the Calumet & Arizona Mining Company was in fact a duly organized corporation. If this were the only error in the record, we would hesitate before reversing the case. On a new trial it will be an easy matter for the prosecution to make proof of that fact, and we would advise that it do so.

Throughout the testimony of the various witnesses there was more or less confusion occasioned by the use, by attorneys and witnesses, of "C. & A. Mining Company," "Calumet and Arizona Copper Mining Company," "C. & A. Mining Company, New Cornelia Branch," "New Cornelia Copper Company," "C & A Copper Company," and defendant therefore contends that the evidence leaves in doubt the ownership of the cement claimed to have been embezzled and the identity of the company for which Barker was working. We have read the evidence, keeping in mind the points made, and, while there may be some slight support of defendant's contention, we hardly think the jury could have been misled. The evidence is that the New Cornelia Co-operative Mercantile Company held in storage and distributed and delivered the cement on requisitions of the Calumet & Arizona Mining Company, and that the latter company owned the mercantile company. It seems to us that the ownership as alleged was sufficiently proved, as was also the fact that Barker was the employee of the Calumet & Arizona Mining Company. Under the evidence Barker was in charge of the storeroom where the cement was stored. It appears that defendant Gibbs ordered cement from the Calumet & Arizona Mining Company at least five different times. These five orders, and the requisitions by the mining company on the New Cornelia Co-operative Mercantile Company corresponding therewith, were introduced by the state as Exhibits A, B, C, D and E. L. K. Davis, supply clerk for the mining company, testified that all of the warehouse requisitions went over his desk, and identified each one of the above exhibits. Their introduction as evidence was objected to on the ground that they were not sufficiently identified. The defendant complains of the rulings of the court in admitting them. These

exhibits were not sent up with 'the record for our inspection, but we think 'they were sufficiently indentified.

The plan or scheme adopted by Barker and defendant was: When one of these orders called for, say, 20 sacks of cement, to charge Gibbs with that many sacks, but deliver to him an excess number. Such excess over and above the amount of 'the orders and requisitions actually passing through the hands of the mining company amounted, according to the allegations of the information, to 105 sacks, of the value of about 90 cents per sack. Defendant contends that there was no evidence except that of Barker, an admitted accomplice, that he received such excess cement, and that there is no other evidence tending to connect the defendant with the commission of the offense charged. There was, however, ample evidence of the delivery of this excess by several witnesses who actually transferred it from the warehouse to the place where defendant was constructing a garage.

In the cross-examination of Barker by defendant he was asked this question: "Now, Mr. Barker, you haven't been arrested or charged with a crime, have you, on this?" On objection by 'the county attorney, the witness was not permitted to answer. The ruling is assigned as error. We think it is always competent to show the interest of a witness for the purpose of ascertaining his leanings or disposition or wishes, and that it is especially competent when the witness is an accomplice and has been promised immunity in case he testifies against his co-accomplice. It is said in 1 Ruling Case Law, 166, § 12:

"In the cross-examination of accomplices great latitude should be allowed, and it would therefore clearly be proper to inquire of an accomplice who has by his own testimony made out a case of murder against himself, whether his testimony against the

accused was not given with the hope of escaping death. The accused has the right to have such fact laid before the jury on the question of the accomplice's credibility. So, also, it has been held error to refuse to permit counsel for the accused to prove, as bearing upon the credibility of the accomplice, that no proceedings whatever had been instituted against him for the murder he had confessedly committed, although several months had elapsed since the crime was perpetrated.''

We are satisfied the court committed error in not permitting the defendant to question Barker, his accomplice, along the lines indicated.

Defendant also assigns as error one of the court's instructions, which reads as follows:

''Now, gentlemen, evidence has been introduced by the state for the purpose of proving acts similar in their nature to that which is charged in the information. Such evidence has been admitted as competent to prove a general plan or scheme between Barker and the defendant with regard to the embezzlement of cement, including the 105 sacks charged in the information, from the Calumet and Arizona Mining Company, and if such general plan and scheme be shown, this evidence is for the purpose of showing the intent of the accused in the commission of the crime charged in this information. You cannot, however, find the defendant guilty upon such evidence alone, and it can only be used by you in determining the alleged intent of the defendant in committing the act alleged in the information, and before you can find the defendant guilty of the offense charged, you must be satisfied beyond a reasonable doubt that Barker did convert and embezzle from the Calumet & Arizona Mining Company the 105 sacks of cement as alleged in the information, and that they were of the value of more than fifty dollars, and that the defendant, Gibbs, did aid and abet, or not being present, did encourage and counsel the said M. A. Barker in the conversion and embezzlement of said 105 sacks of cement.''

It will be noticed that this instruction was given for the purpose of limiting the consideration by the jury of evidence of other crimes of the same nature as charged in the information. The court said:

"This evidence is for the purpose of showing the intent of the accused in the commission of the crime charged in this information."

This phraseology was not only unfortunate, but possibly very damaging. It assumes that the crime charged was committed by the accused. This error was repeated twice in the instruction in different phraseology. In another place therein it was said that such evidence "can only be used by you in determining the alleged intent of the defendant in committing the act alleged in the information." An instruction of the same practical import, in *Lujan* v. *State,* 16 Ariz. 123, 141 Pac. 706, and *Merino* v. *State,* 16 Ariz. 132, 141 Pac. 710, was condemned by this court.

For the errors indicated herein, the judgment is reversed and the cause remanded, with directions that the defendant be granted a new trial.

LOCKWOOD, C. J., and McALISTER, J., concur.