350 P.2d 756

STATE of Arizona, Appellee,

v.

Edward LITTLE, Appellant.

No. 1152.

Supreme Court of Arizona.

March 30, 1960.

Wade Church, Atty. Gen., and Stirley Newell, Asst. Atty. Gen., and Harry Ackerman, County Atty. of Pima County, and Jack I. Podret, Deputy County Atty., Tucson, for appellee.

Beer, Seaman & Polley, Phoenix, for appellant.

BERNSTEIN, Justice.

On this appeal from a judgment of conviction for the crime of unlawful sale of narcotics, defendant raises nine assignments of error.

The first assignment is that the trial court erred in denying defendant's challenge to the jury panel. Defendant claims that the jury was selected from a voters' registration list prepared approximately two and one-half years prior to trial, instead of from a list compiled in accordance with A.R.S. § 21–301. This Section provides:

"A. The board of supervisors at its regular meeting in January, following each biennial general election, or at a special meeting called for that purpose, shall order a list made of all persons within the county qualified to serve as jurors, and shall from time to time revise the list to keep it as complete as practicable, and shall file certified copies of the original and revised lists in the office of the clerk of the superior court."

The State does not assert that the jury list utilized in the instant case was compiled in accordance with the statute, but urges on the basis of this Court's decision in Midkiff v. State, 29 Ariz. 523, 243 P. 601, that such non-compliance, in the absence of a showing of prejudice to the defendant, does not require a mistrial. We recognize that the recent trend has been

to minimize the need for specific proof of actual prejudice where the method of empanelling or selecting the jury permits an inference of the possibility of prejudice. See e. g., Coca Cola Bottling Co. of Flagstaff v. Jones, 74 Ariz. 393, 250 P.2d 586; Moran v. Jones, 75 Ariz. 175, 253 P.2d 891. Here, however, the defendant has made no showing whereby he was or, indeed, may have been prejudiced in any way by the preparation of the jury list, and we consider the decision in Midkiff v. State, supra, authority for holding this assignment to be without merit.

◼ Our holding herein is not to be construed, however, as sanctioning noncompliance with the provisions of A.R.S. § 21–301. A list including only registered voters clearly does not satisfy the statutory requirement of "a list made of all persons within the county qualified to serve as jurors," which list shall be revised from time to time "to keep it as complete as practicable, * * *." The fact that a party to an action may not in every case assign such non-compliance as error does not excuse the Board of Supervisors' failure to prepare a proper jury list or imply the unavailability of other remedies for securing statutory compliance. See A.R.S. § 21–302.

◼ The second assignment is that the trial court erred in sustaining the State's objection to questions propounded by defendant to prove that the chief prosecution witness—who allegedly purchased the narcotics from defendant—was living in open and notorious cohabitation (in violation of A.R.S. § 13–222) and that prosecution officials, knowing that fact, were doing nothing about it in order to induce the witness to testify in favor of the State.

◼ Evidence offered to impeach the credibility of a witness by showing that he has a motive to testify on behalf of the State or against the defendant is generally admissible as proper cross-examination whether such evidence also tends to prove that the witness has committed acts in violation of the law. As stated in Annotation, 62 A.L.R.2d 610, at page 624:

"The rule allowing great or liberal latitude in the cross-examination by defendant of a witness for the prosecution, with respect to his motive for testifying, is especially applicable where such witness is a codefendant or accomplice of the accused, or is charged with or threatened with criminal prosecution for an alleged offense not connected with that with which the person against whom he testifies is charged, and whose testimony against defendant may be influenced by a promise of, or hope or expectation of, immunity or leniency with respect to his case as a consideration for testifying against defendant."

Among the many cases cited in support of the above paragraph is the decision of this Court in Gibbs v. State, 37 Ariz. 273, 279, 293 P. 976, 978, 74 A.L.R. 1105, wherein it was said:

"We think it is always competent to show the interest of a witness for the purpose of ascertaining his leanings or disposition or wishes, and that it is especially competent when the witness is an accomplice· and has been promised immunity in case he testifies against his co-accomplice."

Here the offer of proof was clearly within the range of permissible cross-examination. The objection of the State to the effect that defendant did not offer to prove that the witness himself knew that the acts sought to be proved constituted a crime overlooks the fact that the questions were propounded to the witness himself. The sustaining of the objection imposed too severe a limitation upon the scope allowed defense counsel in cross-examining the witness to whom defendant was alleged to have sold the narcotics illegally.

█ The fact that the answer of the witness may demonstrate that the alleged motive, bias or interest does not in fact exist does not render the question inadmissible. See State v. Aldrich, 75 Ariz. 53, 251 P.2d 653; State v. Rothe, 74 Ariz. 382, 249 P.2d 946.

In this connection the Supreme Court of the United States in Alford v. United States, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624, stated:

"Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. Knapp v. Wing, 72 Vt. 334, 340, 47 A. 1075; Martin v. Elden, 32 Ohio St. 282, 289. It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. Tla-kooyel-lee v. United States, supra [167 U.S. 274, 17 S.Ct. 855, 42 L.Ed. 166]; King v. United States, supra [5 Cir., 112 F. 988]; People v. Moore, 96 App. Div. 56, 89 N.Y.S. 83, affirmed without opinion 181 N.Y. 524, 73 N.E. 1129; cf. People v. Becker, 210 N.Y. 274, 104 N.E. 396. To say that prejudice can be established only by showing that the cross-examination, if pur-

sued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial."

■ The contention that the above evidence is inadmissible unless the defendant offers to prove compulsion of the witness by the State misconstrues the relevancy and purpose of the offer. The witness' belief that his testimony if favorable to the prosecution, will result in leniency or favorable treatment in connection with a crime committed by him is evidence of motive despite the fact that the witness' belief is mistaken, unreasonable or, indeed, is not based on any words or conduct of the prosecution. The test is the witness' expectation or hope of a reward, not the actuality of a promise by the State. See Spaeth v. United States, 6 Cir., 232 F.2d 776, 62 A.L.R.2d 606; People v. Moore, 96 App.Div. 56, 89 N.Y.S. 83, affirmed 181 N.Y. 524, 73 N.E. 1129; Stevens v. People, 215 Ill. 593, 74 N.E. 786; State v. Kent, 4 N.D. 577, 62 N.W. 631, 27 L.R.A. 686. And this expectation of favor or leniency need not be related to the same or similar crime for which defendant is then being tried. Alford v. United States, supra; People v. Pantages, 212 Cal. 237, 297 P. 890; cf. State v. Curcio, 23 N.J. 521, 129 A.2d 871. But cf. State v. Hunter, 183 Wash. 143, 48 P.2d 262; Lott v. United States, 5 Cir., 230 F.2d 915, certiorari denied 351 U.S. 953, 76 S.Ct. 848, 100 L.Ed. 1477.

By the third, fourth and fifth assignments, the defendant urges that the court erred in permitting the State to prove, over objection of defendant, that defendant had sold narcotics on occasions prior to the time alleged in the indictment. The third assignment is based on the general rule that evidence of separate and distinct crimes is inadmissible. The State does not dispute the rule but claims that in the instant case the exception, which permits evidence of similar crimes to prove a common plan, scheme or design, is applicable. Defendant argues that such exception applies only where proof of intent, motive or knowledge, allegedly not in issue in the instant case, is part of the crime.

■■ The general rule and exceptions thereto are well set forth in Dorsey v. State, 25 Ariz. 139, 143–144, 213 P. 1011, 1012:

"The general rule is that, in the prosecution of one accused of a particular offense, evidence showing or tending to show the commission by accused of another crime entirely distinct and independent of that for which he is on trial, even though it be a crime of the same class, is neither relevant nor admissible. This rule is so universally accepted, that it is unnecessary to cite authorities supporting it, * * *.

"To this general rule, however, there are certain well-recognized exceptions, in which evidence of other crimes is competent to prove the specific crime charged. This is true when it tends to establish: (1) Motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes, so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial."

See also Udall, Arizona Law of Evidence § 115.

It is clear that the exception relating to a common scheme or plan does not require, as claimed by defendant, that motive, intent or knowledge, which are separate exceptions, be in issue. See e. g. Lewis v. State, 32 Ariz. 182, 256 P. 1048; Douglass v. State, 44 Ariz. 84, 33 P.2d 985; State v. McDaniel, 80 Ariz. 381, 298 P.2d 798; State v. Martin, 74 Ariz. 145, 245 P.2d 411; 2 Wigmore on Evidence §§ 300, 304 (3rd ed.).

The State argues that the prior narcotics sales were made by defendant only to two persons, one of whom was the purchaser in the instant case, and that the sales were all made in secret to dispose of a limited quantity of narcotics which defendant subdivided when he was unable to dispose of the entire quantity in bulk. The State claims that these prior sales evidence a common scheme or plan which encompassed the instant sale, and are, accordingly, admissible as independent proof of the instant sale. Defendant denies that the State sufficiently proved the alleged common scheme or plan.

We have reviewed the evidence in the voluminous record herein and hold that the State did not lay a sufficient foundation for introduction of testimony of the prior sales. We recognize that the alleged prior sales were also of narcotics, were made to two persons in secret and took place within a month of the instant sale, but these facts are not sufficient alone to permit an inference of a plan whose consummation included the instant sale. Despite the State's contention to the contrary, we find no evidence in the record to prove that the narcotics involved in each sale were originally part of a single quantity which defendant planned to, and did, subdivide and sell or that there was any planned relationship between the various sales. For all that appears from the record, the alleged prior sales were unrelated to each other and to the instant sale. The evidence of the prior sales is not relevant because it does not reasonably permit either part of the double inference necessary to show the plan or scheme: first, from the conduct to the plan; then, from the plan to its consummation by the act in issue. Here, the

evidence does not support an inference of a plan from the fact of the prior sales, and there is no evidence of any plan the consummation of which included the instant sale.

By assignments of error numbered four and five, defendant claims that one of the above offenses testified to was the subject of a criminal action of which defendant was acquitted, and accordingly was inadmissible for that additional reason; and, further, that if evidence of such offenses may be introduced, the entire record of the trial thereof should likewise have been admitted. As the issue of the effect of an acquittal on the admissibility of evidence of a prior offense is of first impression in this jurisdiction, we deem it desirable to consider these assignments at this time.

■ Defendant urges that such evidence is inadmissible under the doctrine of res judicata, which is applicable to criminal proceedings. As stated in 50 C.J.S. Judgments § 754a:

"While there are some cases apparently to the contrary, generally the fundamental principle of res judicata applies to criminal cases, and was not supplanted by the constitutional provision against former jeopardy.

"The principles applicable to judgments in criminal cases are, in general, identical with the principles recognized in civil cases. Hence a judgment or sentence in a criminal proceeding is receivable as evidence of a relevant fact in another criminal proceeding against the same person, and is generally conclusive. Thus a question or issue determined by a prior acquittal may not be relitigated in a criminal proceeding against the same person, but the doctrine does not apply where no precise facts are adjudicated by an acquittal. The conclusiveness of a fact which has been competently adjudicated by a criminal trial is not confined to matter sufficient to support a plea of double jeopardy."

■ In accordance with the general rule, as followed on many occasions by this Court, the judgment in an action has the following effect in a subsequent action between the same parties: where the causes of action are the same, the prior judgment is conclusive, under the doctrine of res judicata, as to all issues which were or might have been litigated in the first action; where the causes of action are different, the judgment in the first action is conclusive, under the doctrine of res judicata or collateral estoppel, only as to such issues as were actually litigated and adjudicated in the first action. See O'Neil v. Martin, 66 Ariz. 78, 182 P.2d 939; Manor v. Stevens, 61 Ariz. 511, 152 P.2d 133; Greer v. Frost, 41 Ariz. 551, 20 P.2d 301; MacRae v. Betts, 40 Ariz. 454, 14 P.2d 253; Fischer v. Hammons, 32 Ariz. 423, 259 P. 676.

Here, the instant action is between the same parties as were involved in the prior action in which defendant was acquitted, but relates to an offense committed on a separate occasion, and, consequently, is for a different cause of action. Accordingly, the prior acquittal operates as a bar only as to issues actually litigated and determined in the first action. As the issue determined by the jury in the first action was whether defendant was guilty of selling narcotics illegally on the date there in issue, the general verdict of acquittal in that action would seem to bar introduction in the present action of any evidence tending to show the criminality of the earlier alleged sale.

The position of the State is that the verdict of acquittal means only that the State there failed to prove beyond a reasonable doubt *all* the elements of the prior offense and that, accordingly, the verdict does not necessarily disprove the fact of the prior sale, which is all that the State seeks to prove in the instant case for the purpose of establishing a plan or scheme. This theory seems to underlay the rule followed in some jurisdictions to the effect that a verdict of acquittal is not a bar to evidence of a former offense. See 2 Wigmore on Evidence, § 317(4) (3rd ed.); 1 Wharton's Criminal Evidence, § 246 (12th ed.). This theory apparently accounts also for the rule that where the jury could not have reached its verdict of acquittal "without having passed directly upon the facts offered to be proved, and found them against the prosecution," the State is estopped from offering to prove such facts (People v. Frank, 28 Cal. 507, 516; see also Bell v. State, 57 Md. 108), and that the record of the former trial may be introduced to refute the evidence of the prior offense (see State v. Hopkins, 68 Mont. 504, 219 P. 1106, Mitchell v. State, 140 Ala. 118, 37 So. 76).

We do not agree, however, that the effect of the prior acquittal should be determined by a strict application of the rules of res judicata or collateral estoppel. Although a verdict of acquittal may not necessarily mean that the jury found that the prior sale did not in fact take place, such a finding is a possible and indeed reasonable inference to be drawn from the verdict. Further, the relevance of the alleged prior sale as part of a plan or scheme may be doubted in the absence of proof of criminality of that prior sale. Thus, if the acquittal is based on an implied finding that the product sold was not sufficiently proved to be a narcotic or that defendant did not know that it was such, the sale could not reasonably be part of a plan knowingly to sell narcotics unless the jury in the instant action is permitted to find, contrary to the finding of the jury in the first action, that the defendant illegally and knowingly sold what was in fact a narcotic.

The exclusion of evidence of a former offense, of which defendant was acquitted, rests upon broader grounds. The general rule excluding proof of other offenses is rooted in the fundamental principle of our criminal law that a conviction should not be based on proof of the defendant's bad character or criminal propensities. As stated in 1 Wigmore on Evidence, §§ 193-194 (3rd ed.), such proof, although relevant, is inadmissible for other reasons:

"The law here declares a general and absolute rule of exclusion. It is forbidden, in showing that the defendant has not the good character which he affirms, to resort to *particular acts of misconduct* by him.

"* * * That such former misconduct is relevant, i. e. has probative value to persuade us of the general trait or disposition, cannot be doubted. * * *" (§ 193) (Emphasis in original.)

"It may almost be said that it is because of this indubitable Relevancy of such evidence that it is excluded. It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal —whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge." (§ 194)

Exceptions to this rule are made where the prior offense is part of a common plan or scheme or where it tends to prove motive, intent, knowledge or identity, not because the defendant is less likely thereby to be labeled a "bad character," but because in those circumstances the prior offense has independent significance which justifies introduction of the evidence. See 1 Wigmore on Evidence, § 216; American Law Institute, Model Code of Evidence, Rule 311.

In the Foreword to the Model Code of Evidence, Professor Edmund M. Morgan explains the scope of the rule and exceptions as follows:

"Such evidence [of other crimes and wrongs when offered to prove the commission of a specified crime or wrong] is made inadmissible only where it is relevant solely as tending to prove a disposition to commit such a crime or wrong or to commit crimes or wrongs generally. If it is relevant for any other purpose, it is admissible." (page 33)

The theory is that evidence, though inadmissible for one purpose, may be admitted if relevant for a different purpose. We

are unable to subscribe to this formulation as it applies to the instant situation. We agree with the recognized exceptions to the general rule excluding evidence of former offenses, because that evidence is relevant, other than as proof of the character of the defendant, and because we believe that the need for and desirability of such evidence outweigh any prejudice to the defendant. Relevancy is thus not the sole test of the admissibility of evidence; admissibility depends, rather, on a balancing of the various effects of the admission of such evidence, considered in the light of recognized rules of law governing the administration of criminal justice.

The fact of an acquittal, we feel, when added to the tendency of such evidence to prove the defendant's bad character and criminal propensities, lowers the scale to the side of inadmissibility of such evidence. The factors which lead us to this balancing may, perhaps, not be subject to precise articulation, but we note two points. As discussed in connection with the third assignment of error above, the relevance of the evidence of the prior offense depends upon the court's or jury's drawing two separate inferences, thus lessening the probative weight of such evidence; where the significance of such evidence must, if the doctrine of res judicata or collateral estoppel is to be given any effect, be determined in the light of the record and verdict of the former trial, the evidence of such former offense tends to become remote, speculative or confusing.

Further, to the extent that evidence of the prior offense tends to prove the instant offense, the defendant is required, in order to avoid conviction and punishment for the instant offense, to refute, for the second time, his commission of the prior offense. A verdict of acquittal should relieve the defendant from having to answer again, at the price of conviction for that crime or another, evidence which amounts to a charge of a crime of which he has been acquitted.

■ We hold that the evidence herein of the prior offense of which defendant was acquitted is inadmissible.

■ Defendant's sixth assignment of error is that the trial court erred in sustaining the State's objection to defense counsel's asking a deputy sheriff whether the prosecuting attorney had told her that his office was "suspicious" of another witness who testified at the trial. The prosecuting attorney, who had earlier been called to testify by the defendant, had denied such a conversation with the deputy sheriff but affirmed that his office had been investigating that witness.

Defendant urges that the testimony was admissible to impeach the credibility of the witness. In this respect defendant is in error. Testimony by the deputy sheriff of

308

her prior conversations with the prosecuting attorney is not admissible to impeach another witness, who did not participate in, but may have been the subject of, such conversations—as it would thus constitute hearsay. To the extent that it tended to impeach the credibility of the testimony of the prosecuting attorney, it may have been admitted, but as it related to a collateral matter, its rejection by the trial court for the only proper purpose for which it could have been offered did not constitute reversible error.

■■■■ As stated in 3 Wharton's Criminal Evidence § 904 (12th ed.):

"The admission or exclusion of testimony as to immaterial or collateral matters for the purpose of impeachment is left to the sound discretion of the trial court.

"A witness cannot be impeached by contradiction upon an immaterial or collateral matter."

See also Brown v. State, 34 Ariz. 150, 268 P. 618; 3 Wigmore on Evidence §§ 1001–1006 (3rd ed.).

■■■■ Assignment of error number seven relates to the rejection by the court of an offer of proof made by defendant upon the cross-examination of a prosecution witness. The parties do not dispute and the record shows that the witness was at the time of trial charged with two felonies, that

he was trying to gain favor from the prosecution to obtain hospital treatment and that his trials had been continued from time to time. Minute entries of both trials had been received in evidence showing that the adjournments had been granted without date. As noted above in the discussion of the third assignment of error, such evidence is admissible to show the motive of the witness testfying in favor of the State.

In addition, however, the defendant offered to prove that the continuances had been granted without prior written application and without specification by the court of the grounds therefor, in violation of Rules 243 and 248 of the Rules of Criminal Procedure, 17 A.R.S. Whether the court or counsel in another case failed to comply with a procedural rule is a question of law on a collateral matter which the trial court properly withheld from the jury. See Singh v. State, 35 Ariz. 432, 445, 280 P. 672, 67 A.L.R. 129. Further, defendant did not offer to prove that the witness even knew of such alleged non-compliance. Even if such evidence were relevant, however, it was merely cumulative and could properly be restricted by the court. See Bush v. State, 19 Ariz. 195, 199–200, 168 P. 508.

■■■ The eighth assignment is that the court erred in allowing the State to introduce into evidence a package containing narcotics, offered as an exhibit of the nar-

cotics sold by defendant, on the ground that the evidence demonstrated conclusively that such package was not the one that was taken from the person to whom defendant allegedly made the sale.

We have reviewed the evidence and hold that a sufficient foundation was laid by the State to render the package and the narcotics admissible in evidence. On cross-examination of the State's witnesses, the defendant elicited varying testimony of the description and custody of the package, but such testimony in this case affects the weight of the evidence, which is a question for the jury, and not its admissibility. See, e. g. Witt Ice & Gas Co. v. Bedway, 72 Ariz. 152, 231 P.2d 952; Wilson v. State, 28 Ariz. 539, 237 P. 950.

■ The ninth assignment is that the court erred in permitting the State to introduce in evidence a blackjack and a bicycle sprocket chain made into a blackjack, which were allegedly taken from defendant's automobile on the evening of the alleged narcotic sale. The State argues that such blackjacks, although concededly not used in furtherance of the alleged crime, were admissible as part of the *res* *gestae* or history of the arrest. For a critical analysis of the term "res gestae" see Udall, Arizona Law of Evidence § 172.

We have reviewed the evidence and conclude that the blackjacks should not have been admitted in the *instant case over the objection* of defendant. The presence of blackjacks in defendant's automobile was *irrelevant to any proper issue and served in* no way to explain the circumstances of the crime. The evidence, in fact, showed that *the blackjacks were acquired by defendant at a time when he was a police officer.* See e. g. Giordano v. United States, 6 Cir., 185 F.2d 524; Brubaker v. United States, 6 Cir., 183 F.2d 894; People v. McCall, 10 Cal.App.2d 503, 52 P.2d 500. Whether the admission of such evidence, though improper, alone constitutes reversible error need not here be determined, as the ruling of this Court on Assignments of Error two through five requires reversal of the judgment of conviction.

For the foregoing reasons the judgment of conviction is reversed and the case is remanded for a new trial.

STRUCKMEYER, C. J., and PHELPS, UDALL and JOHNSON, JJ., concur.