285 So.2d 436 (1973)
Jimmy Edward JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. S-355.
District Court of Appeal of Florida, First District.
November 20, 1973.
Brooks Taylor and William Howard LaPorte, Crestview, for appellant.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
PER CURIAM.
Affirmed on authority of Blackburn v. State, 208 So.2d 625 (Fla.App.3d 1968).
WIGGINTON and SPECTOR, JJ., concur.
RAWLS, C.J., dissents.
RAWLS, Chief Judge (dissenting).
"No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense... ."[1] [Emphasis supplied.] "... [N]or shall any person be subject for the same offense to be twice put in jeopardy for life or limb."[2] "The question is no longer whether collateral estoppel is a requirement of due process, but whether it is a part of the Fifth Amendment's guarantee against double jeopardy ... . `Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[3]
It is my view that these basic constitutional guarantees were flagrantly abused by the sovereign in the instant cause. The salient point on appeal concerns the admission of testimony of a witness pursuant to the authority of Williams v. State[4] as to a collateral crime allegedly committed by appellant some nine months prior to the offense for which he was charged.
In the case sub judice, appellant was charged with the crime of breaking and entering a dwelling house with the intent to commit a felony, to wit, rape, while armed with a dangerous weapon. Evidence adduced at the trial was primarily composed of the testimony of the husband and wife, occupants of the dwelling, their mobile home. The husband and wife testified that they are devout Christians; each teach Sunday School, sing in the choir, and *437 on Thursday nights share with other people their feelings and relationship with Jesus Christ. The wife testified that around 2:40 a.m. she and her husband were sleeping in the nude in their bedroom; that she was awakened by someone, whom she subsequently identified as appellant, "who pulled hard on my cover"; and she thereupon awakened her husband. The intruder was standing on her side of the bed with a knife in his hand. She further testified that for the next hour and a half the intruder remained in their home; that being in fear of her life she assisted him in tying her husband's hands and putting him in the bathroom. Thereafter, appellant attempted to have intercourse with her against her will, but the act was not accomplished. The wife then went to the bathroom where she procured some cream, returned to the bed, and by using her hand was able to cause appellant to ejaculate. At this point in time appellant stated, "Let's talk about being saved," and, "Put your clothes on." The wife then donned her nightgown, appellant untied the husband, whereupon the husband said, "Why don't you make some coffee?" The husband proceeded to read from "a little green book" and to pray with the appellant. Appellant thanked the husband and wife for being so nice to him and trying to help him, and proceeded to leave. They gave appellant the "little green book" to take with him, and he apologized for what he had done. As the appellant was stepping out of the mobile home, the husband picked up the knife and handed it to him. The husband corroborated the testimony of the wife, and each of them identified appellant as a young, black male who lived next door to them. Other testimony by fingerprint experts corroborated the charge of appellant breaking and entering.
The state at this stage had proven a strong case in support of its charge; however, it was not content and went for the overkill. Over pretrial objection and vigorous objection of appellant's attorney, a young girl was called by the state. On direct examination, she testified that approximately nine months prior to the time of the instant offense, around 3:30 a.m., appellant, at knife point, abducted her, carried her to a schoolhouse and raped her two times. On cross examination, the following colloquoy took place:
"Q. [appellant's attorney] Do you remember testifying in this courtroom before a jury of ten men and two women previously to this?
"A. Yes, sir.
"Q. And do you remember being here at 4:00 o'clock on Sunday morning when the jury found the defendant not guilty?
"A. Yes, sir."
So, this witness, whose testimony had been rejected by twelve citizens serving as a petit jury, was permitted to testify in a second criminal prosecution between the State of Florida and appellant as to facts regarding an alleged collateral crime of which appellant was acquitted.
In Ashe v. Swenson, supra, the U.S. Supreme Court homogenized the doctrine of collateral estoppel with the provisions of the Federal Fifth Amendment's guarantee against double jeopardy, viz:
"`Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.
......
"The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to *438 `examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry `must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180, 184. Any test more technically restrictive would, of course simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.
......
"The ultimate question to be determined, then, in the light of Benton v. Maryland, supra, is whether this established rule of federal law is embodied in the Fifth Amendment guarantee against double jeopardy. We do not hesitate to hold that it is. For whatever else that constitutional guarantee may embrace, North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656, 664, it surely protects a man who has been acquitted from having to `run the gantlet' a second time. Green v. United States, 355 U.S. 184, 190, 78 S.Ct. 221, 2 L.Ed.2d 199, 205, 61 A.L.R.2d 1119."
This appellant was tried by the State of Florida for the commission of the crime of rape on June 14, 1971. The State of Florida relied primarily in that trial upon the testimony of the female prosecuting witness. The appellant was acquitted. In the year 1972, the State of Florida, by information, accused and tried this appellant of committing the crime of breaking and entering with intent to commit rape. In the instant prosecution, the State called as one of its principal witnesses the female prosecuting witness in the 1971 rape case, who was permitted to recite in detail the identical testimony that had obviously been rejected previously by a jury of her peers. As stated in Ashe,
"Once a jury had determined from conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the state could not present the same or different identification evidence... ."
The 1971 jury verdict of acquittal in the rape trial between the State of Florida and this appellant determined from conflicting testimony that this appellant did not criminally assault the prosecuting witness; the state is estopped from presenting the same evidence in a subsequent criminal prosecution between the same parties.
The majority of the Third District Court of Appeal in Blackburn v. State,[5] in reviewing a similar factual situation, held that the testimony of a witness of defendant's criminal act on a previous occasion was admissible even though he was found not guilty by a jury. In reaching this conclusion, the majority recited the basic "Williams" doctrine that:
"It is not error to allow evidence of crimes other than the one which defendant is charged if it is relevant... ." [Citing Williams v. State, 110 So.2d 654 (Fla. 1959); and Talley v. State, 160 Fla. 593, 36 So.2d 201 (1948).]
The obvious point that escaped the majority in Blackburn is that a duly empaneled jury in the name of the State of Florida had found that the defendant had not committed the crime to which the witness was testifying. As pointed out by Judge Pearson in his dissent in Blackburn, most of the reported cases cited in 86 A.L.R.2d 1132 (1962) annotation support the decision of the Blackburn majority. However, of particular significance, Blackburn and the cases supporting the majority opinion therein were decided at a time when the U.S. Supreme Court refused to engrave *439 the doctrine of collateral estoppel upon the double jeopardy provision in the Fifth Amendment. As pointed out in Ashe, supra, in Hoag v. New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958), the operative facts are virtually identical to those in Ashe. After making the foregoing observation, the Federal Supreme Court flatly receded from Hoag and held that the application of collateral estoppel in a criminal case is "no longer a matter to be left for state court determination within the broad bounds of `fundamental fairness'... ."
I agree wholeheartedly with Judge Pearson's dissent in Blackburn and the rationale of the Arizona Supreme Court's decision in State v. Little, 87 Ariz. 295, 350 P.2d 756, 86 A.L.R.2d 1120 (1960).
In my opinion, the majority's decision in the instant cause does not comport with law or logic, not to mention justice.
I would reverse and remand for a new trial.
NOTES
[1] Fla. Const. art. I, § 9 (1968), F.S.A.
[2] U.S.Const. Amend. V.
[3] Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).
[4] Williams v. State, 110 So.2d 654 (Fla. 1959).
[5] Blackburn v. State, 208 So.2d 625 (3 Fla.App. 1968).