MAGER, Judge
(dissenting) :
In my opinion, the per curiam affirmance by the majority effectively ignores several significant general principles of law as well as decisional law dealing with the application of the Williams rule and the circumstantial evidence rule. I must therefore respectfully dissent for the reasons hereinafter set forth.
This case involves an appeal from a judgment of conviction and sentence for breaking and entering a dwelling house with intent to commit a felony, to wit, grand larceny.
The record reflects that on July 16, 1974, an unidentified individual was observed entering a condominium apartment in Coral Springs during the daylight hours. When the occupants of the apartment returned they found that it had been burglarized and various household goods missing including a set of car keys.
An examination of the apartment revealed the existence of a butter knife and copy of a Coral Springs newspaper several days old, neither of which belonged to the occupants. The newspaper, which was in a rolled up position and opened to the classified want ad section, contained a latent fingerprint (which was later identified as belonging to the defendant). Although other places and objects were dusted for fingerprints including the butter knife no other identifiable fingerprints were found except the one taken from the newspaper.
The record further reflects that on July 31, 1974, the police authorities, in response to a complaint from the same occupants of the burglarized apartment that someone was tampering with their car, arrived at the parking lot area of the condominum at approximately two-thirty in the morning and observed a car occupied by the defendant’s brother parked in a slot with the front of the vehicle facing out into the parking area. The defendant was found some several hundred feet away standing in a public phone booth with the phone in *145 his hand. The explanation given by the defendant to the police authorities was that he and his brother had gotten lost on their way home from Pompano to Hollywood and were attempting to make a phone call at a phone booth located in a shopping center several hundred feet from the parking lot of the condominium. (All of the foregoing, which was elicited from the testimony of the state’s witnesses and alluded to in the opening remarks of the prosecutor, was objected to by the defendant at trial.)
The defendant was subsequently arrested for prowling and later charged with breaking and entering an auto.[1] The automobile belonging to the occupants of the apartment was examined but was unable to yield any fingerprints. The testimony in the record reflects that the charges of prowling and breaking and entering an auto were subsequently dropped. Apparently, because of the proximity of the complainants’ car to their apartment and the arrest of the defendant in the vicinity, fingerprints taken at the time of the defendant’s arrest were compared with the fingerprint lifted off the newspaper and found to be those of the defendant. However, the state’s fingerprint expert was unable to establish the time the print was placed on the newspaper.
It is the defendant’s contention that the conviction based upon the fingerprint evidence was error because of the state’s failure to prove that the fingerprint was made at the time the crime was committed; and, furthermore, that the evidence of defendant’s presence in the vicinity of the prior burglary and accompanying arrest was inadmissible as not being relevant. Defendant has assigned several other errors which we find to be without merit and which will not be discussed herein.
In considering the defendant’s contention regarding the “collateral crime” evidence we are again faced with the interpretation and application of the vexatious “Williams rule”. In Marion v. State, Fla.App.1974, 287 So.2d 419, 421, this court restated the observation of the late Mr. Justice Thornal regarding the purpose of this rule:
“ ‘In Williams v. State, supra, we undertook to examine in depth the rules governing the admissibility of similar fact evidence as proof of a fact in issue in a criminal case. We there held that similar fact evidence is admissible if relevant, except to prove bad character or criminal propensities. Such evidence is not objectionable merely because it points to the commission of another crime. The objective to be accomplished by allowing such evidence is not proof of a collateral crime outside of the indictment. Its purpose is to prove a fact in issue in the case before the Court. Its relevancy will not be destroyed merely because it would also be relevant to the proof of a separate crime. .’” (Emphasis added.)
It was additionally pointed out in Marion that there must be a, correlation between the crime charged and the “collateral crime” sought to be utilized. In this regard we observed, in part:
“. . . (J)f identity is in issue, the mere fact that a defendant was identified as being involved in another crime does not render such collateral evidence admissible without some similarity in the operation and scheme of both crimes; there is clearly an interrelationship between method of operation, common scheme or design and identity. . . .” (Emphasis added.) (287 So.2d at 422).
See also Whitehead v. State, Fla.App.1973, 279 So.2d 99. Simply stated, there must be some common denominator between the crime charged and the “collateral crime”; there must be a plateau of *146 sameness or commonality between the separate offenses to justify admissibility. Franklin v. State, Fla.App.1969, 229 So.2d 892; Drayton v. State, Fla.App.1974, 292 So.2d 395.
Manifestly, the intended use of the “collateral crime” evidence must be relevant to the crime charged. See Duncan v. State, Fla.App.1974, 291 So.2d 241. Introduction of “collateral crime” evidence is not for the purpose of showing that the accused has committed another crime but, rather, for the purpose of proving an essential or material issue framed within the charge being tried. Duncan v. State, supra. For example, if similar crimes reflect a similarity (or even uniqueness) between the plan or scheme utilized in both circumstances coupled with the defendant’s positive connection with the collateral crime, such “collateral crime” evidence can be utilized at the trial of the crime charged to establish identity of a defendant if identity is a material fact issue in such case. However, absent commonality and relevancy the resulting and logical effect of the collateral crime evidence is to show the propensity of the defendant to commit other crimes or prove the defendant’s bad character; clearly such use of effect is prohibited. Williams v. State, Fla.1959, 110 So.2d 654.
When measured by the foregoing standard, it is my opinion that the “collateral crime” episodes occurring on July 31 in the parking lot area adjacent to the burglarized condominium are totally lacking in commonality with the crime of breaking and entering of a dwelling committed on July 16 as to be inadmissible. The events of July 31 resulting in an arrest for prowling and a later dropped charge of auto breaking and entering were dissimilar in every respect from the July 16 crime of breaking and entering a dwelling with intent to commit a felony, to wit, grand larceny. The introduction of this evidence was highly prejudicial and under these circumstances it had the obvious effect of leaving the jury with the impression of defendant’s propensity to commit crimes or his bad character.
The dissimilarity in the instant case, between the “collateral crime” and the crime charged is not the only basis for rendering the “collateral crime” evidence inadmissible. As heretofore stated, the “collateral crime” evidence must be relevant — it must be introduced to prove a fact in issue in the case before the court. Marion v. State, supra; State v. Norris, Fla.1964, 168 So.2d 541. Since the “collateral crime” episodes were dissimilar in all respects from the crime charged, evidence of the former could not be characterized as relevant to a common plan, scheme, design or modus op-erandi. Its arguable relevancy would therefore seem to have been the establishment of identity.
However, from a review of the evidence in the record of the circumstances surrounding the July 31 incident there is no evidence to connect the defendant with the purported auto breaking and entering so as to establish identity in that offense. It has been held that in order for evidence of collateral crimes to be admissible there must be clear and convincing proof of a connection between the defendant and the collateral occurrences. State v. Norris, supra; Parnell v. State, Fla.App.1969, 218 So.2d 535. As the Supreme Court observed in State v. Norris, supra,” ... In this respect mere suspicion is insufficient. The proof should be clear and convincing.” While the evidence in the instant case reflects that a crime may have been committed in the parking lot, the evidence is not clear and convincing that such “crimes” were committed by the defendant. See also Norris v. State, Fla.App.1963, 158 So.2d 803.
The unusual facts in this case suggests one additional comment regarding the utilization of the “collateral crime” evidence. The relevancy of any “collateral crime” evidence is dubious, indeed, where it is shown that the charges giving rise to such collateral crimes have been dropped. Re *147 cent decisions of the first and third districts have recognized that an acquittal of collateral crime charges does not render evidence of such crimes inadmissible; however, the able dissents in those decisions present persuasive argument to the contrary. Blackburn v. State, Fla.App.1968, 208 So.2d 625; Wingate v. State, Fla.App.1970, 232 So.2d 44; Johnson v. State, Fla.App.1973, 285 So.2d 436; see, in particular, State v. Little, 87 Ariz. 295, 350 P.2d 756 (Ariz.1960). Moreover, there is an obvious difference between the effect of an acquittal and the circumstance where criminal charges no longer exist. The fundamental notion of justice and fair play is somehow offended by the prospect of introducing evidence of collateral acts that cannot be raised to the level of a criminal charge. It is as efficacious as gossip or rumor which certainly have no place within the framework of our criminal justice system.
Excising the inadmissible evidence of the episodes of July 31, the only remaining evidence is the defendant’s fingerprint on a newspaper found in the burglarized apartment. Where fingerprint evidence is sought to be utilized to establish identity the circumstances must be such that the fingerprint could have been made only at the time the crime was committed. Bryant v. State, Fla.1970, 235 So.2d 721; Ivey v. State, Fla.App.1965, 176 So.2d 611; Tirko v. State, Fla.App.1962, 138 So.2d 388; see also Williams v. State, Fla.App.1975, 308 So.2d 595; A.V.P. v. State, Fla.App.1975, 307 So.2d 468. The testimony in the record clearly demonstrates the state’s inability to establish, to any reasonable degree, when the fingerprint was placed on the newspaper.
The newspaper bore a date several days prior to the date of the burglary; and although the evidence clearly demonstrated that the newspaper was not in the apartment prior to the time of the burglary, nevertheless there was no evidence to show when the fingerprint was placed on the newspaper. The fingerprint could have been placed on the newspaper either at the time the crime was committed or at some prior time; the newspaper could have been left in the burglarized apartment by the defendant or by some other person who picked up such newspaper.[2] The most the fingerprint evidence shows is that the defendant touched the newspaper; but it tells us nothing about when. See A.V.P. v. State, supra; see also Williams v. State, Fla.1971, 247 So.2d 425; compare with Roberts v. State, Fla.App.1972, 268 So.2d 578.
It is axiomatic that to sustain a conviction in circumstantial evidence cases the evidence must not only be consistent with the guilt of the accused but inconsistent with every reasonable hypothesis of his innocence. Duran v. State, Fla.App.1974, 301 So.2d 486; Williams v. State, Fla.App.1968, 206 So.2d 446; Amato v. State, Fla.App.1974, 296 So.2d 609. In Harrison v. State, Fla.App.1958, 104 So.2d 391, 394-5, the court aptly observed:
“When circumstantial evidence is relied upon for conviction in a criminal case, the circumstances, when taken together, must be of a conclusive nature and tendency, leading on the whole to a reasonable and moral certainty that the accused, and no one else, committed the offense. If the facts in proof are equally consistent with some other rational conclusion than that of guilt, the evi *148 dence is insufficient. If the evidence leaves it indifferent as to which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof, however great the probability may be. It is the actual exclusion of each other reasonable hypothesis which clothes mere circumstances with the force of proof. Circumstantial evidence which leaves nothing more than a suspicion that the accused committed a crime is not sufficient to sustain a conviction.” (Emphasis added.)
See also Terzado v. State, Fla.App.1970, 232 So.2d 232. In particular, it is pointed out in Amato v. State, at 610, 611:
“Bearing in mind that with circumstantial evidence, such as we have in the case at bar, the test to be applied on review of a denial of a motion for judgment of acquittal is not whether, in the opinion of the trial court or the appellate court, the evidence fails to exclude every reasonable hypothesis but that of guilt but, rather, whether the jury might reasonably so conclude. Vick v. United States, 216 F.2d 228 (Sth Cir. 1954). The jury is the pivotal point at which the evidence is aimed, not the courts.
* *****
“Assuming arguendo, the jury had only the fingerprint evidence before it with nothing else, the testimony would have been insufficient and a judgment of acquittal should have been granted.
The particular fact situation reflects the existence of evidence which was not legally sufficient to have been submitted to a jury because the jury could not have found guilt beyond and to the exclusion of every reasonable doubt. See also Brown v. State, Fla.App.1974, 294 So.2d 128.
This is not to suggest that fingerprint evidence, alone, found either in a public or a private place is insufficient upon which to predicate a conviction; had fingerprints been found on some other object or location within the burglarized premises or found in a place accessible only by application of force or on objects with which the defendant could not have had legitimate contact, the result might have been otherwise. However, here the prints were discovered on objects which were readily movable and in common usage, i. e. a newspaper. In this regard, the case presents a factual circumstance of first impression in this state.
In United States v. Corso, 4 Cir. 1971, 439 F.2d 956, a case involving fingerprints found on a book of safety matches used to jam a lock at the scene of a burglary, it was pointed out:
“The most damaging evidence was the defendant’s fingerprints found on the matchbook cover. His fingerprints were not discovered elsewhere on the premises, on the damaged safes, desks or other articles in the Credit Union office which had been burglarized although some ten other fingerprints of unidentified persons were there obtained. The Government’s fingerprint expert testified that it was impossible to determine how long defendant’s fingerprints had been on the matchbook cover and admitted they could have been placed there months before the burglary. Thus, there was no direct evidence to show that defendant’s fingerprints were impressed upon the cover at the time of the burglary. The probative value of an accused’s fingerprints upon a readily movable object is highly questionable, unless it can be shown that such prints could have been impressed only during the commission of the crime. . . . ” (Emphasis supplied.)
See also United States v. Cotton, 6 Cir. 1970, 426 F.2d 939. It was also pointed *149 out in Commonwealth v. Cichy, 227 Pa.Super. 480, 323 A.2d 817, 819:
“ . . . (I)f the prints are discovered on an object that is readily movable and in common usage, the possibility of innocent contact is too great to sustain a conviction on that evidence alone.
The fingerprint evidence in the instant case created a strong suspicion consistent with defendant’s guilt; but it did not exclude nor was it inconsistent with a reasonable hypothesis of the defendant’s inno-cense. See Mayo v. State, Fla.1954, 71 So.2d 899. The presence of defendant’s fingerprint on a readily movable object such as a newspaper in common usage coupled with the absence of proof as to when the fingerprints were placed on the object can only be construed as creating a doubt in a reasonable mind. The evidence was not legally sufficient to permit the jury to arrive at any conclusion other than not guilty; therefore a motion for directed verdict of acquittal should have been granted. Brown v. State, supra; Amato v. State, supra.
In order to obviate any characterization that the conclusion reached herein is predicated upon “another legal technicality” I would simply state that a conviction cannot and should not be sustained unless there is proof of guilt beyond a reasonable doubt. No principle is more substantively and firmly ingrained in our system of jurisprudence. However displeasing the process of seemingly releasing an individual who might otherwise be considered “guilty”, safeguarding the constitutional rights of all persons is, has been and must continue to be an essential function of the courts.
Accordingly, it is my opinion that the judgment of conviction and sentence must be reversed with directions that defendant be discharged.

. The missing car keys were found by a gard-ner working around the shrubbery next to the condominium about a month after the burglary and roughly approximately two weeks after the episode in the parking lot.

. Defendant testified on his own behalf and sought to explain the presence of his fingerprint on the newspaper. He claimed that he was in the area several days prior to the burglary looking for a job and that he had found a local paper in a phone booth and browsed through the classified ad section and that the newspaper in question was probably the newspaper he had been handling. It might be well to point out that we have no way of knowing whether the defendant would have testified on his own behalf regarding the presence of his fingerprint on a newspaper had it not been for the necessity to explain his presence at the parking lot condominium a week after the burglary.